UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WACKER NEUSON PRODUCTION AMERICAS, LLC, a Wisconsin limited liability company,

      Plaintiff,

v

CITY OF NORTON SHORES, a Michigan Municipal Corporation,

      Defendant.

Case No. 19 -

**HON.**

---

VARNUM LLP
Adam J. Brody  (P62035)
Jeffrey D. Koelzer (P78602)
Attorneys for Plaintiff
333 Bridge St NW
PO Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

---

## COMPLAINT

NOW COMES Plaintiff, Wacker Neuson Production Americas, LLC ("Wacker Neuson"), by and through its counsel, Varnum LLP, and for its Complaint states as follows:

### JURISDICTIONAL ALLEGATIONS

1. Wacker Neuson is a Wisconsin limited liability company, with a principal business location at N92 W15000 Anthony Avenue, Menomonee Falls, Wisconsin 53051.

2. Defendant, the City of Norton Shores (the "City"), is a Michigan municipal corporation with its offices are located at 4814 Henry Street, Norton Shores, Michigan 49441.

3. The amount in controversy exceeds $75,000.

4. Jurisdiction is proper in this Court pursuant 28 U.S.C. § 1332.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

6. Wacker Neuson incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

**A.  Wacker Neuson explores investment in Norton Shores, and obtains an Industrial Facilities Tax exemption.**

7. In 2007, Wacker Neuson explored the possibility of making a $7.5 million investment in the City.

8. The proposed investment involved the construction of a 168,000 square foot manufacturing and warehouse facility as well the acquisition of $500,000 of personal property for that facility.

9. The Michigan Economic Development Corporation deemed the project "very important to the State of Michigan and the City of Norton Shores."

10. To induce this investment, the City approved and the State Tax Commission issued an Industrial Facilities Tax ("IFT") exemption certificate (Certificate #2008-038, the "Certificate") to Wacker Neuson. *See* Certificate, **Exhibit A**.

11. The Certificate was issued on May 12, 2008 and went into effect for twelve years, beginning December 31, 2008 and set to conclude on December 30, 2020.

12. As part of the issuance of that Certificate, the City required Wacker Neuson to execute the City's form Act 198 Agreement (the "Agreement"), which was drafted by the City. *See* Agreement, **Exhibit B**.

13. The purpose of the Agreement was to ensure that the City would receive an economic benefit from the presence of Wacker Neuson's proposed facility.

14. In general, the Agreement granted certain tax savings to Wacker Neuson, and it included a provision that, if the City were to lose out on the economic benefit of operation of the facility at the property, then the City could recapture those tax savings.

15. The first paragraph of the City's form Agreement denotes that Wacker Neuson will be referred to as "The Company" within that document.

16. Paragraphs 1-5 of the Agreement outline certain expectations of "the Company."

17. Paragraph 6 of the Agreement, however, refers to the "the applicant," as opposed to the "Company," stating:

> The applicant shall remain with the local unit during the period of time for which the abatement has been approved and, if the applicant relocates, substantially reduces employment and/or operations, or closes the facility, the applicant shall pay to the affected taxing units an amount equal to those taxes it would have paid had the abatements not been in effect.

18. Thus, the Agreement requires the "applicant," but not the "Company," to remain in the City for the duration of the abatement period. If the "applicant" were to relocate, reduce operations or employment, or close the facility, the applicant would then be required to repay the tax abatements to the City.

19. As such, the form Agreement contemplates and provides for circumstances where the "Company" relocates but the "applicant" remains in place, such as when the underlying IFT exemption Certificate is transferred from the "Company" to a new "applicant" that has purchased the facility, as would happen in this case.

**B.   Wacker Neuson makes a significant investment in its Norton Shores operation.**

20. Between the years of 2007 and 2009, Wacker Neuson made a significant investment in the City.

21. Wacker Neuson not only fulfilled its commitment to construct a 168,000 square foot manufacturing and warehouse facility (the "facility") at 1300 E Mt Garfield Road in the City, but it also increased its initially-proposed investment from $7.5 million to approximately $9.5 million.

22. Wacker Neuson made this critical investment during the Great Recession of 2007, which began in late 2007 and lasted until at least 2009. Thus, at a time when many businesses in the United States were struggling to maintain employment or downsizing, Wacker Neuson was making a sizable investment in the City, to the direct benefit of the City and its residents.

C. **Wacker Neuson sells its Norton Shores facility to TGW Systems, Inc. and transfers its IFT exemption certificate.**

23. After several additional investments in the City and the passing of almost ten years, it became clear to Wacker Neuson that the facility was not economically sustainable.

24. However, Wacker Neuson did not abandon Norton Shores. Rather, Wacker Neuson secured another manufacturer, TGW Systems, Inc. ("TGW"), that committed not only to maintaining production and employment at the property, but also to further investing in, developing and increasing the capacities of the property.

25. As a result of Wacker Neuson securing TGW as a replacement resident, the City was in a superior financial position than it would have been if Wacker Neuson itself had remained at the facility.

26. TGW purchased the facility from Wacker Neuson and the City approved the transfer of the IFT exemption Certificate to TGW.

27. Wacker Neuson's IFT exemption Certificate was never revoked.

28. In addition, the City recently approved a further IFT exemption for TGW to make an additional $2.5 million real estate investment at the subject property.

**D.     The City attempts to "claw back" Wacker Neuson's past tax abatements.**

29.     Despite the enormous economic benefit realized by the City over the almost ten years that Wacker Neuson operated at the facility, on or about September 19, 2018, the City sent an invoice to Wacker Neuson in the amount of $966,943.65, claiming that this amount represented "the Claw Back amount calculated on what would have been taxed on the Real Property and Personal Property had the IFEs [sic] not been granted" and was purportedly based on "#6 of the agreement." *See* Invoice, **Exhibit C**.

30.     Subsequently, on November 7, 2018, the City issued a revised invoice in the amount of $951,346.94.  *See* November 7, 2018 letter and invoice, attached as **Exhibit D**.

31.     In response, Wacker Neuson's counsel sent correspondence to the City, explaining that the City's attempted claw back was in violation of both the letter and spirit of the Agreement. *See* December 13, 2018 letter, **Exhibit E**.

32.     Pursuant to the Agreement, the City was required to provide Wacker Neuson with a public hearing before taking any action to attempt to recapture the abated taxes.

33.     Consequently, the City breached the Agreement by sending the above-referenced invoices demanding payment.

34.     Moreover, the "public hearing" that was ultimately provided to Wacker Neuson was limited to a three (3) minute time slot at the City's December 18, 2018 City Council meeting, at which counsel for Wacker Neuson had little time to do anything other than request that the City rescind the previously issued invoices and resolve not to seek further recovery of the abated taxes.

35.     On January 2, 2019, the Norton Shores City Council adopted a resolution denying Wacker Neuson's request to rescind the invoices that had been issued, instead taking the position

that the abated taxes should be paid to the City. *See* January 2, 2019 Resolution, attached as **Exhibit F**.

36. In that Resolution, the City Council also claimed that Wacker Neuson "was economically sustainable when the decision to relocate was made." *Id.* at 2.

37. This assertion is false. Contrary to the City's conclusion, Wacker Neuson's facility was losing significant amounts of money in the months and years leading up to its decision to sell the facility to TGW.

38. Thus, one of the primary basis upon which the City Council based its decision was without factual support and was patently false.

## COUNT I
## DECLARATORY JUDGMENT

39. Wacker Neuson incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

40. As set out above, there is an actual case or controversy between Wacker Neuson and the City as to the parties' rights and obligations related to the Agreement, particularly whether the City is entitled to recapture the tax benefits previously conferred upon Wacker Neuson.

41. The dispute is ongoing at the time of the filing of this litigation.

42. It is necessary for this Court to adjudicate and declare the rights of Wacker Neuson in this action to preserve Wacker Neuson's legal rights and guide the parties' future conduct.

43. This Court has the power under 28 U.S.C. § 2201 and FRCP 57 to adjudicate the matter at issue and enter judgment declaring the rights of the parties in this action. The existence

of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.

WHEREFORE, Wacker Neuson requests that this Court enter judgment in its favor and against Defendant pursuant to 28 U.S.C. § 2201:

a. Declaring that Wacker Neuson has not breached the Agreement;

b. Declaring that, by transferring the Certificate to TGW, TGW has become the "applicant" within the meaning of paragraph 6 of the Agreement and Wacker Neuson has fulfilled its obligations under that paragraph;

c. Declaring that Wacker Neuson is entitled to retain all tax benefits it has accrued or realized under the Agreement and the Certificate;

d. Declaring that the City is not entitled to reimbursement of any tax benefits previously provided to Wacker Neuson; and

e. Awarding Wacker Neuson its costs, attorney fees, and any other relief this Court deems equitable and appropriate.

## COUNT II
## BREACH OF CONTRACT

44. Wacker Neuson incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

45. The Agreement is a valid and enforceable contract between Wacker Neuson and the City.

46. Wacker Neuson has fully performed, and/or is ready, willing, and able to perform, its obligations under the Agreement.

47. The City has unequivocally represented to Wacker Neuson, in its January 2, 2019 City Council Resolution, that the City intends to attempt to recapture the tax abatements that

Wacker Neuson has previously received or accrued pursuant to the Agreement and the Certificate.

48. The City's representations in this regard evidence a clear intention by the City to breach its contractual obligation to Wacker Neuson, which constitutes an anticipatory repudiation and breach of the Agreement.

49. As a result of the City's anticipatory repudiation and breach of the Agreement, Wacker Neuson is entitled to remedies for breach of contract.

50. Wacker Neuson has suffered, and will continue to suffer, damages as a result of the City's anticipatory breach, and further damages may continue to accrue.

WHEREFORE, Wacker Neuson requests that this Court enter judgment in its favor and against Defendant awarding Wacker Neuson damages in an amount to be proven at trial, and further awarding Wacker Neuson its costs, attorney fees, and any other relief this Court deems equitable and appropriate.

Respectfully submitted,

VARNUM LLP
Counsel for Plaintiff

Dated: January 10, 2019  By: ___/s/ *Jeffrey D. Koelzer*___
Adam J. Brody (P62035)
Jeffrey D. Koelzer (P78602)
BUSINESS ADDRESS & TELEPHONE:
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

14434889_1.docx