UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

_____

WACKER NEUSON PRODUCTION
AMERICAS, LLC, a Wisconsin limited
liability company,

               Plaintiff,

v

CITY OF NORTON SHORES, a Michigan
Municipal Corporation,

            Defendant.

Case No. 1:19-cv-00018-JTN-ESC

**HON. JANET T. NEFF**

---

| VARNUM LLP | WILLIAMS HUGHES PLLC |
|---|---|
| Adam J. Brody (P62035) | Douglas M. Hughes (P30958) |
| Jeffrey D. Koelzer (P78602) | Enrika L.F. McGahan (P55860) |
| Attorneys for Plaintiff | John M. Karafa (P36007) |
| 333 Bridge St NW | Attorneys for Plaintiffs |
| PO Box 352 | 120 W. Apple Avenue |
| Grand Rapids, MI 49501-0352 | Muskegon, MI 49440 |
| (616) 336-6000 | (231) 726-4857 |

---

## ANSWER TO COMPLAINT

NOW COMES Defendant, City of Norton Shores (the "City"), by and through its counsel, Williams Hughes PLLC, and for its Answer to Complaint states as follows:

## JURISDICTIONAL ALLEGATIONS

1.     Wacker Neuson is a Wisconsin limited liability company, with a principal business location at N92 W15000 Anthony Avenue, Menomonee Falls, Wisconsin 53051.

**ANSWER:  Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the**

**averments of this paragraph, and leave Plaintiff to its proofs**.

2.      Defendant, the City of Norton Shores (the "City"), is a Michigan municipal

corporation with its offices are located at 4814 Henry Street, Norton Shores, Michigan 49441.

**ANSWER:  Admitted.**

3.      The amount in controversy exceeds $75,000.

**ANSWER:  Admitted.**

4.      Jurisdiction is proper in this Court pursuant 28 U.S.C. § 1332.

**ANSWER:  Admitted.**

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391.

**ANSWER:  Admitted.**

<u>**GENERAL ALLEGATIONS**</u>

6.      Wacker Neuson incorporates by reference the allegations in the preceding

paragraphs as if fully restated herein.

**ANSWER: Defendant hereby incorporates and re-alleges its answers to paragraphs**

**one (1) through five (5) as though fully stated herein.**

A.      <u>**Wacker Neuson explores investment in Norton Shores, and obtains an Industrial**</u>
        <u>**Facilities Tax exemption.**</u>

7.      In 2007, Wacker Neuson explored the possibility of making a $7.5 million

investment in the City.

**ANSWER:  Neither admitted nor denied for the reason that the Defendant is**

**without knowledge or information sufficient to form a belief as to the truth of the**

**averments of this paragraph and leave Plaintiff to its proofs**.

8.      The proposed investment involved the construction of a 168,000 square foot manufacturing and warehouse facility as well the acquisition of $500,000 of personal property for that facility.

**ANSWER: Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and leave Plaintiff to its proofs**.

9.      The Michigan Economic Development Corporation deemed the project "very important to the State of Michigan and the City of Norton Shores."

**ANSWER: Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and leave Plaintiff to its proofs**.

10.     To induce this investment, the City approved, and the State Tax Commission issued an Industrial Facilities Tax ("IFT") exemption certificate (Certificate #2008-038, the "Certificate") to Wacker Neuson. *See* Certificate, **Exhibit A**.

**ANSWER:  Admitted that the document is attached.  The exhibit speaks for itself. The balance of paragraph 10 is neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.**

11.     The Certificate was issued on May 12, 2008 and went into effect for twelve years, beginning December 31, 2008 and set to conclude on December 30, 2020.

**ANSWER:  Admitted.**

12.     As part of the issuance of that Certificate, the City required Wacker Neuson to execute the City's form Act 198 Agreement (the "Agreement"), which was drafted by the City.

*See* Agreement, **Exhibit B**.

      **ANSWER:  Admitted.**

13.     The purpose of the Agreement was to ensure that the City would receive an economic benefit from the presence of Wacker Neuson's proposed facility.

      **ANSWER:  Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs, but do affirmatively represent that the purpose of the Agreement is to attract and retain economic investment and jobs.**

14.     In general, the Agreement granted certain tax savings to Wacker Neuson, and it included a provision that, if the City were to lose out on the economic benefit of operation of the facility at the property, then the City could recapture those tax savings.

      **ANSWER:  Admitted.**

15.     The first paragraph of the City's form Agreement denotes that Wacker Neuson will be referred to as "The Company" within that document.

      **ANSWER:  Admitted.**

16.     Paragraphs 1-5 of the Agreement outline certain expectations of "the Company."

      **ANSWER:  Admitted.**

17.     Paragraph 6 of the Agreement, however, refers to the "the applicant," as opposed to the "Company," stating:

> The applicant shall remain with the local unit during the period of time for which the abatement has been approved and, if the applicant relocates, substantially reduces employment and/or operations, or closes the facility, the applicant shall pay to the affected taxing units an amount equal to those taxes it would have paid had the abatements not been in effect.

**ANSWER:  Admitted.  Company and Applicant refer to the same entity.**

18.     Thus, the Agreement requires the "applicant," but not the "Company," to remain in the City for the duration of the abatement period. If the "applicant" were to relocate, reduce operations or employment, or close the facility, the applicant would then be required to repay the tax abatements to the City.

**ANSWER:  Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.  However, "Company" and "Applicant" refer to the same entity.**

19.     As such, the form Agreement contemplates and provides for circumstances where the "Company" relocates but the "applicant" remains in place, such as when the underlying IFT exemption Certificate is transferred from the "Company" to a new "applicant" that has purchased the facility, as would happen in this case.

**ANSWER:  Denied as untrue.  Plaintiff is trying to evade a tax liability based on an argument of semantics.**

**B.     Wacker Neuson makes a significant investment in its Norton Shores operation.**

20.     Between the years of 2007 and 2009, Wacker Neuson made a significant investment in the City.

**ANSWER: Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and leave Plaintiff to its proofs.**

21.     Wacker Neuson not only fulfilled its commitment to construct a 168,000 square foot manufacturing and warehouse facility (the "facility") at 1300 E Mt Garfield Road in the

City, but it also increased its initially-proposed investment from $7.5 million to approximately $9.5 million.

**ANSWER: Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph and leave Plaintiff to its proofs**.

22.     Wacker Neuson made this critical investment during the Great Recession of 2007, which began in late 2007 and lasted until at least 2009. Thus, at a time when many businesses in the United States were struggling to maintain employment or downsizing, Wacker Neuson was making a sizable investment in the City, to the direct benefit of the City and its residents.

**ANSWER:  Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.**

C.    **Wacker Neuson sells its Norton Shores facility to TGW Systems, Inc. and transfers its IFT exemption certificate.**

23.     After several additional investments in the City and the passing of almost ten years, it became clear to Wacker Neuson that the facility was not economically sustainable.

**ANSWER:  Denied as untrue.  In further answer, the Plaintiff's finance director explained that profitable Wisconsin line was moved to Germany which made that plant unprofitable and therefore Norton Shores production was moved to Wisconsin.**

24.     However, Wacker Neuson did not abandon Norton Shores. Rather, Wacker Neuson secured another manufacturer, TGW Systems, Inc. ("TGW"), that committed not only to maintaining production and employment at the property, but also to further investing in, developing and increasing the capacities of the property.

**ANSWER:  Denied as untrue.  In further answer, Wacker Neuson moved their**

Norton Shores production line to Wisconsin.

25.     As a result of Wacker Neuson securing TGW as a replacement resident, the City was in a superior financial position than it would have been if Wacker Neuson itself had remained at the facility.

**ANSWER:  Denied as untrue.  In further answer, TWG was an existing Norton Shores company.  There was no net gain by them moving to the Wacker Neuson facility.**

26.     TGW purchased the facility from Wacker Neuson and the City approved the transfer of the IFT exemption Certificate to TGW.

**ANSWER:  Admitted.**

27.     Wacker Neuson's IFT exemption Certificate was never revoked.

**ANSWER:  Admitted.**

28.     In addition, the City recently approved a further IFT exemption for TGW to make an additional $2.5 million real estate investment at the subject property.

**ANSWER:  Admitted.**

D.     **The City attempts to "claw back" Wacker Neuson's past tax abatements.**

29.     Despite the enormous economic benefit realized by the City over the almost ten years that Wacker Neuson operated at the facility, on or about September 19, 2018, the City sent an invoice to Wacker Neuson in the amount of $966,943.65, claiming that this amount represented "the Claw Back amount calculated on what would have been taxed on the Real Property and Personal Property had the IFEs [sic] not been granted" and was purportedly based on "#6 of the agreement." *See* Invoice, **Exhibit C**.

**ANSWER:  Admitted that the document is attached.  The exhibit speaks for itself.**

The balance of paragraph 29 is neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.

30.     Subsequently, on November 7, 2018, the City issued a revised invoice in the amount of $951,346.94.  *See* November 7, 2018 letter and invoice, attached as **Exhibit D**.

**ANSWER:  Admitted that the document is attached.  The exhibit speaks for itself. The balance of paragraph 30 is neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.**

31.     In response, Wacker Neuson's counsel sent correspondence to the City, explaining that the City's attempted claw back was in violation of both the letter and spirit of the Agreement. *See* December 13, 2018 letter, **Exhibit E**.

**ANSWER:  Admitted that the document is attached.  The exhibit speaks for itself. The balance of paragraph 31 is neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.**

32.     Pursuant to the Agreement, the City was required to provide Wacker Neuson with a public hearing before taking any action to attempt to recapture the abated taxes.

**ANSWER:  Admitted.**

33.     Consequently, the City breached the Agreement by sending the above-referenced invoices demanding payment.

**ANSWER:  Denied as untrue.  A public hearing was held by the City Council on 12/18/18.**

34.     Moreover, the "public hearing" that was ultimately provided to Wacker Neuson was limited to a three (3) minute time slot at the City's December 18, 2018 City Council meeting, at which counsel for Wacker Neuson had little time to do anything other than request that the City rescind the previously issued invoices and resolve not to seek further recovery of the abated taxes.

**ANSWER:  Denied as untrue.**

35.     On January 2, 2019, the Norton Shores City Council adopted a resolution denying Wacker Neuson's request to rescind the invoices that had been issued, instead taking the  position that the abated taxes should be paid to the City.   *See* January 2, 2019 Resolution, attached as **Exhibit F**.

**ANSWER:  Admitted that the document is attached.  The exhibit speaks for itself. The balance of paragraph 35 is neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.**

36.     In that Resolution, the City Council also claimed that Wacker Neuson "was economically sustainable when the decision to relocate was made." *Id.* at 2.

**ANSWER:  Admitted.**

37.     This assertion is false. Contrary to the City's conclusion, Wacker Neuson's facility was losing significant amounts of money in the months and years leading up to its decision to sell the facility to TGW.

**ANSWER:  Denied as untrue.  In further answer, in October 2017 representatives of Defendant met with two of Plaintiff's company officials who stated that the Plaintiff was having the "best year ever".**

38.     Thus, one of the primary basis upon which the City Council based its decision was without factual support and was patently false.

**ANSWER:  Denied as untrue.**

## COUNT I DECLARATORY JUDGMENT

39.     Wacker Neuson incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

**ANSWER:  Defendant hereby incorporates and re-alleges its answers to paragraphs one (1) through thirty-nine (39) as though fully stated herein.**

40.     As set out above, there is an actual case or controversy between Wacker Neuson and the City as to the parties' rights and obligations related to the Agreement, particularly whether the City is entitled to recapture the tax benefits previously conferred upon Wacker Neuson.

**ANSWER: Admitted.**

41.     The dispute is ongoing at the time of the filing of this litigation.

**ANSWER:  Admitted.**

42.     It is necessary for this Court to adjudicate and declare the rights of Wacker Neuson in this action to preserve Wacker Neuson's legal rights and guide the parties' future conduct.

**ANSWER:  Neither admitted nor denied for the reason that the Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of this paragraph, and leave Plaintiff to its proofs.  In further answer, Defendant will request the Court to preserve the Defendant invoice and declaration page document and enforcement of the due yet unpaid balance and late payment penalties.**

43.     This Court has the power under 28 U.S.C. § 2201 and FRCP 57 to adjudicate the matter at issue and enter judgment declaring the rights of the parties in this action. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.

**ANSWER:  Admitted.**

WHEREFORE, Defendant requests that this Court enter judgment in its favor and against Plaintiff pursuant to 28 U.S.C. § 2201 awarding Defendant damages in an amount to be proven at trial, and further awarding Defendant its costs, attorney fees, and any other relief this Court deems equitable and appropriate.

## COUNT II BREACH OF CONTRACT

44.     Wacker Neuson incorporates by reference the allegations in the preceding paragraphs as if fully restated herein.

**ANSWER:  Defendant hereby incorporates and re-alleges its answers to paragraphs one (1) through forty-three (43) as though fully stated herein.**

45.     The Agreement is a valid and enforceable contract between Wacker Neuson and the City.

**ANSWER:  Admitted.**

46.     Wacker Neuson has fully performed, and/or is ready, willing, and able to perform, its obligations under the Agreement.

**ANSWER:  Denied as untrue.  Plaintiff breached paragraph 6 of the Agreement by relocating and by not paying an amount equal to the abated taxes.**

47.     The City has unequivocally represented to Wacker Neuson, in its January 2, 2019 City Council Resolution, that the City intends to attempt to recapture the tax abatements that

Wacker Neuson has previously received or accrued pursuant to the Agreement and the Certificate.

**ANSWER:  Admitted that the Defendant intends to enforce the Agreement and collect the amount due.**

48.     The City's representations in this regard evidence a clear intention by the City to breach its contractual obligation to Wacker Neuson, which constitutes an anticipatory repudiation and breach of the Agreement.

**ANSWER:  Denied as untrue.**

49.     As a result of the City's anticipatory repudiation and breach of the Agreement, Wacker Neuson is entitled to remedies for breach of contract.

**ANSWER:  Denied as untrue.**

50.     Wacker Neuson has suffered, and will continue to suffer, damages as a result of the City's anticipatory breach, and further damages may continue to accrue.

**ANSWER:  Denied as untrue.**

WHEREFORE, Defendant requests that this Court enter judgment in its favor and against Plaintiff awarding Defendant damages in an amount to be proven at trial, and further awarding Defendant its costs, attorney fees, and any other relief this Court deems equitable and appropriate.

Respectfully submitted,

Williams Hughes PLLC

Dated:  March 20, 2019                    By:    /s/ Douglas M. Hughes
                                                  Douglas M. Hughes (P30958)
                                                  120 W. Apple Avenue
                                                  Muskegon, MI 49440
                                                  (231) 726-4857