UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

---

WACKER NEUSON PRODUCTION AMERICAS, LLC, a Wisconsin limited liability company,

Plaintiff,

v

CITY OF NORTON SHORES, a Michigan Municipal Corporation,

Defendant.

Case No. 1:19-cv-00018-JTN-ESC

**HON. JANET T. NEFF**

---

VARNUM LLP
Adam J. Brody (P62035)
Jeffrey D. Koelzer (P78602)
Attorneys for Plaintiff
333 Bridge St NW
PO Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000

WILLIAMS HUGHES PLLC
Douglas M. Hughes (P30958)
Enrika L.F. McGahan (P55860)
John M. Karafa (P36007
Attorneys for Plaintiffs
120 W. Apple Avenue
Muskegon, MI 49440
(231) 726-4857

---

# BRIEF IN SUPPORT OF DEFENDANT CITY'S MOTION PURSUANT TO DETERMINE SUFFICIENCY OF PLAINTIFF WACKER'S RESPONSES AND TO COMPEL AMENDED ANSWERS TO REQUESTS FOR ADMISSIONS, AND OTHER RELIEF

## I. Procedural History – Wacker's Application and Issuance of the IFEC 2008

Pursuant to Act 198 of the Public Acts of 1974 (the "**Act 198**"), eligible businesses in Michigan may apply for tax exemptions in designated industrial zones, the maximum period is twelve years, and there are other statutory conditions which attach to the granting of such applications.

In May 2007 Defendant City established the area at1300 E. Mt. Garfield Road, as an Industrial Development District, pursuant to Act 198. (**Exhibit 1**- Resolution).

By application dated November 1, 2007, Wacker applied for property tax exemptions in the City for the operation of its industrial facility. **(Exhibit 2- Wacker's Application)**. Wacker's application was made pursuant to Act 198 which governed Plant Rehabilitation and Industrial Development Districts, MCL 207.551 et seq.

The State of Michigan Tax Commission is the agency charged with issuing tax exemption certificates. Before the Tax Commission issues a tax exemption certificate to a business applicant, it must first ascertain that there is an Act 198 Agreement between the business applicant and the local governing unit. In this regard, MCL 207.572(1) states in relevant part:

> (1) A new industrial facilities exemption certificate shall not be approved and issued under this act after April 1, 1994, unless a written agreement is entered into between the local governmental unit and the person to whom the certificate is to be issued, and filed with the department of treasury.

In November 2007 the parties entered into an Act 198 Agreement, nearly contemporaneously with Wacker's November 1, 2007, application. **(Exhibit 4- Act 198 Agreement).** The Act 198 Agreement executed in November 2007 by and between the parties, states in pertinent part:

> "*RE: Act 198 Agreement with the City of Norton Shores*
>
> ***Wacker Corp. (The Company) has submitted an application to the City of Norton Shores (City) for the granting of an Industrial Facilities Exemption Certificate*** *(IFT) pursuant to Act 198, P.A. 1974, as amended.*
>
> ***To encourage the granting of the IFT*** *and in recognition of the investment the City will be making toward the economic growth of the Company and thus the community,* ***I hereby agree on behalf of the Company:***
>
> 1) *The attached information sheet is an integral part of this agreement and outlines the investment the Company intends to make.*
> 2) *The Company will submit a letter to the City no later than January 10th immediately following the second year after the issuance of the IFT certifying:*

*a) Number of jobs created or retained*
*b) Actual cost for both real and personal property acquisitions*
*c) If the number of jobs created or total project cost differ from that described in the information sheet, a disclosure explaining the variance is required.*

*3) The Company will recertify the current employment information outlined above every year through the expiration of the IFT.*

*4) The Company understands that if employment has not been retained or reached, or the expansion or improvement was not substantially completed as described in the application and information sheet, the City has the right to reduce the term or revoke the IFT.*

***5) The applicant shall remain within the local unit during the period of time for which the abatement has been approved and, if the applicant relocates, substantially reduces employment and/or operations, or closes the facility, the applicant shall pay to the affected taxing units an amount equal to those taxes it would have paid had the abatement not been in effect.***

*By the signatures below, representatives of both the Company and City acknowledge their responsibilities towards the successful completion of the project. It is understood certain economic conditions may delay or even prohibit the maintenance of the Company's goals. Prior to any City action concerning the reduction or revocation of an IFT, or recapture of abated taxes, the Company will have the right to a public hearing before the City Council."*

***(emphasis added)***[1]

On May 12, 2008, the State of Michigan Tax Commission granted Wacker's

---

[1] Notwithstanding the business and statutory purposes underlying Wacker's application for an exemption certificate, the benefits it realized over the years pursuant to the statutory scheme, and the terms of its Act 198 Agreement with the City, Wacker purports to argue in this action that the reference to "*applicant*" in the Act 198 Agreement at ¶5 is somehow not a reference to Wacker (see Plaintiff's Complaint, ECF No. 1, PageID.3, ¶ 18 where Wacker asserts "*Thus, the Agreement requires the "applicant", but not the 'Company,' to remain in the City for the duration of the abatement period ...*" Defendant City maintains that Wacker's unabashed claim in this regard is frivolous. Nevertheless, that issue will be taken up in later proceedings. It is outlined here to demonstrate the City's interests in having prepared at substantial time and expense, and served uon Wacker, explicit requests for admissions and additional discovery demands in order to separate, so to speak, the wheat from the chaff as proceedings move forward. The City's efforts in this regard were designed to move the ball downfield toward the goal of clarity and issue reduction and elimination. On the contrary, as will be seen in the discussion here of Wacker's responses, we have unfortunately only lost yardage in this regard, requiring the filing of this motion.

application for an Industrial Facility Exemption Certificate. (hereafter "**IFEC 2008**"). (**Exhibit 3- IFEC 2008**).

By its stated terms the IFEC 2008 issued to Wacker, which granted tax exemptions, was to remain in effect for 12 years for both real and personal property, commencing December 31, 2008, and ending December 30, 2020.

In its Act 198 Agreement with the City, Wacker committed to "*remain with the local unit during the period of time for which the abatement has been approved ...", i.e.* until December 30, 2020. *(***Exhibit 4-Act 198 Agreement, ¶5***).*[2]

The Act 198 Agreement between the parties stated in part the consequences in the event Wacker did not fulfill its obligation to the City in any one of several ways, to wit: "*and, if the applicant relocates, substantially reduces employment and/or operations, or closes the facility, the applicant shall pay to the affected taxing units an amount equal to those taxes it would have paid had the abatement not been in effect.*" *(***Exhibit 4-Act 198 Agreement, ¶5***).*

Wacker subsequently operated its industrial facility at 1300 Mt. Garfield Road, within the City, and received real and personal property tax abatements during each year of its operations. However, years before and in breach of its commitment under the Act 198 agreement, Wacker ceased its operations within the City and relocated its business operations elsewhere.

Pursuant to the remedies provision of the parties' Act 198 Agreement, Wacker became obligated to the City in an amount commensurate with "*those taxes it would have paid had the abatement not been in effect.*"

---

[2] Additional Act 198 Agreements were entered into between the parties during Wacker's operations over the years when, for example, Wacker obtained additional property that it wanted to be subject to the statutory privileges of tax abatements.

Accordingly, the City issued to Wacker its invoice #253012 dated September 19, 2018, in the amount of $966,943.65, representing the amount owed by Wacker pursuant to the "*IFT Clawback*". (See Wacker's Complaint, ECF No. 1, ¶29, PageID. 5, referencing complaint Exhibit C, Invoice and attached supporting data from City, PageID.15-30).

Two months later, on November 7, 2018, the City issued to Wacker its revised invoice #253015, in the amount of $951,346.94, along with supporting data, reflecting a "*reduction based on the removal of four months of the winter tax bill calculated from the August 31, 2017 closing date through December 31, 2018.*" (See Wacker's Complaint, ECF No. 1, ¶30, PageID. 5, referencing its complaint Exhibit D, Invoice and attached supporting data from the City, PageID.31-49).

Wacker filed this declaratory judgment action claiming it was not obligated to the City under its Act 198 Agreement for the "*taxes it would have paid had the abatement not been in effect*". The City disputes the materiality, indeed the relevance, of Wacker's evidential assertions. Therefore, the City served Wacker specific discovery demands and requests in order to identify and narrow down the purported bases of Wacker's stated claims for a more efficient presentation of the case to the court.

More particularly, for purposes of this motion, the City served "*Defendant Norton Shores First Requests For Admissions To Plaintiff Wacker*". (**Exhibit 5- Requests for Admissions**). Wacker served its answers on August 21, 2019. (**Exhibit 6- Answers to First Requests for Admissions**).

The City submits that this motion for a judicial determination of the answers and for an order compelling amended answers, and other relief, is required, as Wacker has circumvented the specific purposes of the court rule and the City's objectives in eliminating and narrowing issues. Fed. R. Civ. P. 36(6).

## II. R. 36 Entitles the City To Narrow Issues and Establish Material Facts

The City's requests for admissions are governed by Fed. R. Civ. P. 36 ("the rule").. The rule permits a party to serve requests to admit "*the truth of any matters within the scope of Rule 26(b)(1) relating to (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents.*" Fed. R. Civ. P. 36 (a)(1)(A)(B).

With regard to the answering party's obligations, the rule states:

> *(4) Answer. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.*
>
> *(5) Objections. The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.*

And with regard to the requesting party's remedies in the event it claims that the responding party's answers do not meet the letter or spirit of the rule, R. 36 further provides:

> *(6) Motion Regarding the Sufficiency of an Answer or Objection. The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.*

Rule 36 provides that when a party is dissatisfied with the sufficiency of the answers by the responding party, the court may be asked to intervene, and the court may award expenses pursuant to R. 37(a)(5). *McCarthy v Ameritech Publ., Inc.*, 763 F.3d 488, 493-494

(6th Cir. 2014).

Requests for admissions have been held to be other than a discovery device, as they are served on the assumption "*that the party proceeding under it already knows the fact or has the document and merely seeks the opposing party to authenticate its genuineness.*" *Misco, Inc. v. United States Stee; Corp.*, 784 F.2d 198 (6th Cir. 1986).

The rule expedites trial by establishing as true certain material fats of a case without the necessity of formal proof. *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir. 1978).

In this case, as seen by Wacker's attached responses, Wacker's responses, either intentionally or through a lack of effort, effectively circumvents precisely what the rule is designed to accomplish. In fact, more confusion than not is generated by Wacker's statements. Little if anything is resolved.

The City's obligation under the rule was to be singularly specific and clear. Defendant Wacker's obligation was to exercise good faith and be responsive in accordance with the rule's purposes and criteria. A review of the specific requests and responses will shed light on the City's frustrations in its effort to narrow these issues.

III. **Wacker's Deficient Responses**

The City's requests were specific, singular in scope, and relevant to the issues raised by Wacker in its pleadings. (**Exhibit 5- Requests for Admissions**). For example, RA #1 asked Wacker to admit that IFEC 2008 certified Wacker's property at 1300 E. Mt. Garfield Road as a new industrial facility.

The court can see from the IFEC 2008, attached hereto as Exhibit 3, that the single page certificate, issued by the Tax Commission on May 12, 2008, provided in part:

"*Therefore, as provided by MCL 207.551 to 207.572, inclusive, the State Tax Commission hereby certifies as a new industrial facility the property located at 1300 E. Mt. Garfield Rd.*"

The City's first RA merely asked Wacker to admit this fact:

"**REQUEST TO ADMIT #1:** That IFEC 2008 certified your property at 1300 E. Mt. Garfield Road as a new industrial facility. MCL 207.551, et seq."

Instead of doing so, Wacker launched into a rambling if not cryptic statement which leaves this otherwise simple proposition entirely unsettled, and in need of further litigation or trial on the proposition. Wacker responded:

**"ANSWER: As an initial matter, the referenced document ("IFEC 2008") speaks for itself, and to the extent this proposition is inconsistent with the referenced document, the proposition is denied. Subject to the foregoing, it is admitted that the 'IFEC 2008,' as defined in Defendant's First Requests for Admissions, certified the property at 1300 E. Mt. Garfield Road as a new industrial facility."**

**(Exhibit 6-** Wacker's Answers)

Wacker engaged in the same approach regarding RA #2, which also addressed a factual feature of IFEC 2008:

"**REQUEST TO ADMIT #2:** That IFEC 2008 was issued to be and remain in effect for twelve (12) years for real and personal property, commencing December 31, 2008, unless revoked by order of the State Tx Commission.

**"ANSWER: As an initial matter, the referenced document ("IFEC 2008") speaks for itself, and to the extent this proposition is inconsistent with the referenced document, the proposition is denied. Subject to the foregoing, it is admitted that the 'IFEC 2008,' as defined in Defendant's First Requests for Admissions, was issued to be and remain in effect for twelve (12) years for real and personal property, commencing December 31, 2008, unless revoked by order of the State Tax Commission."**

The City's requests in RA numbers 1 and 2 were designed to close the door on

straightforward "propositions." Wacker's responses do anything but meet the purpose and requirements of the rule. Its references to the document speaking for itself, says nothing. It is not an admission. It is not an objection. It merely references the document and suggests that it may be consistent with the City's proposition, in which event it is, at least by implication, possibly admitted; but if it is not consistent, it would appear to be, expressly denied. It is unknown what Wacker's position is.

So where does that leave us on the "proposition? Conditionally, expressly denied? Conditionally, by implication, admitted? Wacker does not say. It leaves the reader to ponder the possibilities, much like a philosopher musing over the subject of infinity. There is no conclusion.

It might be said that the closing statement in Wacker's response can be somewhat taken as an agreement with the proposition. But even then it is specifically stated to be "*subject to the foregoing*" equivocal statements. That makes it even more confusing, and less conclusive.

The City's proposition is precisely what it was attempting to have Wacker admit, i.e. that the stated "*proposition*" <u>is</u> consistent with the referenced document. Instead of admitting in good faith that which the document "speaks for itself" clearly enough, Wacker engages in avoidance. In doing so, instead of gaining yardage in our efforts to gain clarity and reduce the issues for trial, we are delivered a loss, though violative of the rule.

Wacker engages in the same approach regarding RA #13, and the City has the same objection to Wacker's response here.

In RA #13 the City requested Wacker to admit:

**"That the IFEC 2008 approved in your favor by Defendant City was for twelve**

**years."**

This is simple enough. All Wacker had to do was look at IFEC 2008, identify whether it states a time frame for the tax exemptions granted, and if so, whether it was for 12 years. But Wacker's response here was nearly identical to its response to RA# 1 and RA#2:

**"ANSWER: As an initial matter, the referenced document ("IFEC 2008") speaks for itself, and to the extent this proposition is inconsistent with the referenced document, the proposition is denied. Subject to the foregoing, it is admitted that the term of the 'IFEC 2008,' as defined in Defendant's First Requests for Admissions, was for twelve years."**

**(Exhibit 6-** Wacker's Answers)

For the same reasons outlined above regarding Wacker's deficient response to RA#1 and RA#2, the City objects to Wacker's response to RA#13.

Plaintiff Wacker engaged in a similar and equally objectionable approach regarding the City's RA #5 and RA#14. However, in these instances the requests addressed application of statutory law to the case facts.

RA#5 thus requested an admission that MCL 207.572(1) required the entry of a written agreement between the parties before a tax exemption certificate will be granted. In this regard, MCL 207.572(1) states:

> "(1) A new industrial facilities exemption certificate shall not be approved and issued under this act after April 1, 1994, unless a written agreement is entered into between the local governmental unit and the person to whom the certificate is to be issued, and filed with the department of treasury."

Wacker's reply to RA#5 was non-responsive, argumentative, and conditional on impermissible factors:

**"ANSWER: The statute, as properly interpreted in accordance with Michigan law, speaks for itself, and to the extent this proposition is inconsistent with a proper reading of the referenced statute, it is denied."**

Wacker provides the same unacceptable response to RA#14, which simply requested Wacker's admission that "*12 years is the longest duration of time permitted for issuance of an Industrial Facilities Exemption Certificate under Michigan law, MCL 207.566.*" (**Exhibit 5- Requests for Admissions**).

In this regard, MCL 207.566, incidentally entitled "*Duration of industrial facilities exemption certificate*", states in pertinent part:

> "(1) Unless earlier revoked as provided in section 15, an industrial facilities exemption certificate shall remain in force and effect for a period to be determined by the legislative body of the local governmental unit and commencing with its effective date and ending on the December 31 next following not more than 12 years after the completion of the facility with respect to both the real property component and the personal property component of the facility ..."

Wacker's reply to RA#14 was non-responsive, argumentative, and conditional on impermissible factors:

**"ANSWER: The statute, as properly interpreted in accordance with Michigan law, speaks for itself, and to the extent this proposition is inconsistent with a proper reading of the referenced statute, it is denied."**

Note that Wacker does not object to the request as being improper in form, or beyond the scope of the rule. Rather, it merely ignores the request. Instead, it inserts swirling semantics which laypersons might call "legaleze", and lawyers might simply call non-responsive nonsense. Wacker's response, loaded with qualifiers and conditions, says a lot, and says nothing.

Curiously, Wacker's response seems to suggest that the referenced statutes are so clear as to speak for themselves when "properly interpreted". But Wacker does not favor us with its perception of what the statute says when it speaks for itself.

Then it proceeds to entirely dodge the requests by suggesting that the propositions advanced by the City in the requests are denied but only "*to the extent the*

*proposition is inconsistent with a proper reading of the referenced statute*". This is precisely what the City is attempting to narrow down. It is at the very heart of the City's requests.

Wacker's responses to RA#5 and RA#14 effectively render Fed. R. Civ. P. 36 a meaningless nullity.

**(Exhibit 6-** Plaintiff/Counter-Defendant's Answers RA#5, RA#14).

Regarding RA #6, Wacker would not even admit that there were only two parties to the Act 198 Agreement, to wit: Plaintiff Wacker and Defendant City. This should have been a simple admission. Wacker's unreasonable argumentation in its response demonstrates the reason why the City decided to submit these requests in the first instance. The untenable position taken by Wacker was evident in its initial pleadings.

Wacker's position is unsound and desperate. It reveals its unwillingness to admit the most specific propositions. Instead it leaves the oxygenated atmosphere in search of an issue. In this regard, RA #6 simply stated:

**"REQUEST TO ADMIT #6:** That the only parties to the Act 198 Agreement were you and Defendant City."

**"ANSWER: It is admitted that, at the time the original 'Act 198 Agreement,' as defined in Defendant's First Request for Admissions, was executed, the only signatories to the Act 198 Agreement were Wacker Neuson and the City. In further response, Wacker Neuson lacks any information regarding what agreement the City has required from the new applicant, TGW Systems, Inc., ('TGW'), including whether TGW has become a party to the same Act 198 Agreement or entered into a new agreement."**

**(Exhibit 6-** Wacker's Answers)

Here, the City is thrown additional set-backs in its good faith attempt under the rule to narrow and eliminate basic issues. Wacker runs deep into left field to avoid

answering the most basic of propositions, and incidentally one reduced to irreducible terms – *admit the agreement involved you and the City.*

instead of simply admitting the proposition, Wacker engages in a statement about the "original" agreement, and then proceeds to add a story line involving immaterial and irrelevant points over a non-party and the possibility of the non-party's agreement with the City, which Wacker admittedly knows nothing about. Wacker's response was entirely non-responsive, and argumentative.

Moreover, Wacker qualifies its answer by making reference to the '*Act 198 Agreement as defined in Defendant's First Requests for Admissions ...*" when in fact Defendant City defined the Act 198 Agreement in its requests in a way that would prevent Wacker from engaging in such semantics –

> *"The term 'Act 198 Agreement' refers to the Act 198 Agreement more specifically referenced in paragraphs 12-19 of your complaint, and attached to your complaint as Exhibit B."*

(See, Plaintiff Wacker's complaint, Exhibit B, ECF No. 1, PageID.12-14).

There is no reference to any party other than Wacker Neuson Corp. and its "*Act 198 Agreement with the City of Norton Shores*" arising from Wacker's "*application to the City of Norton Shores (City) for the granting of an Industrial Facilities Exemption Certificate (IFE pursuant to Act 198, P.A. 1974, as amended.*"

Yet, Wacker takes the City's definition of the referenced Act 198 Agreement in its requests for admissions, tailored to Wacker's own complaint exhibit, turns it back on the City as its own definition, and proceeds to add a story line to its response that involves a third party, having nothing to do with the request. This has required Defendant City to move for a remedy to narrow this response, strike surplusage, and move the ball forward toward the goal of clarity and issue reduction.

The same analysis applies regarding Wacker's response to RA #7:

**"REQUEST TO ADMIT #7:** That at the time you entered into the Act 198 Agreement with Defendant City you were the applicant for an Industrial Facility Exemption Certificate."

The Court may perhaps criticize this request for taking the time to seek an admission on something trite, at least to the extent it states so much of the obvious. Indeed, the Act 198 Agreement, for starters, attached to Wacker's complaint, Exhibit B, as noted above, identifies Wacker's "*application to the City of Norton Shores (City) for the granting of an Industrial Facilities Exemption Certificate (IFE pursuant to Act 198, P.A. 1974, as amended.*" This seems clear enough.

However, based on Wacker's purported claims in this action, the City recognized the need and value in resolving even the most basic, obvious, and fundamental propositions. The City's concerns in this regard again are reflected in Wacker's response to RA #7:

**"ANSWER: It is admitted that Wacker Neuson was "the applicant" within the meaning of the Act 198 Agreement. However, it is denied that the meaning of the term "the applicant" within the Act 198 Agreement was static. Wacker Neuson ceased being "the applicant" within the meaning of the Act 198 Agreement when the IFEC 2008 was transferred to TGW, which then replaced Wacker Neuson as "the applicant."**

Wacker rests its denial of the City's proposition on the unspecific term "static" in relationship to a contractual clause. It denies that its role as "applicant" was static? Is that what Wacker is saying? Again, the City's proposition was clear and unequivocal – admit that "*at the time you entered into the Act 198 Agreement with Defendant City you were the applicant for an Industrial Facility Exemption Certificate.*"

Frankly, the more one reads Wacker's response, the stranger it gets. Any

attempt to break it down logically leads one to go back and start over, trying to find the sense which Wacker presumably intended in its response.[3]

Defendant City is confronted with the same issue in Plaintiff Wacker's response to RA #8, which states:

**"<u>REQUEST TO ADMIT #8</u>:** That pursuant to your Act 198 Agreement you agreed to remain with the local unit during the period of time for which the tax abatement was approved by IFEC 2008."

Once again, the Act 198 Agreement was specifically referred to for purposes of the requests to admit as the Act 198 agreement attached to Wacker's complaint, as Exhibit B, for ease of reference. (See, Exhibit 5, Requests for Admissions, definitions; Plaintiff Wacker's complaint, Exhibit B, ECF No. 1, PageID.12-14). That agreement, attached to Wacker's complaint, was signed by Wacker in January 2011.

The Act 1998 Agreement was entered into in November 2007 (*Exhibit 4- Act 198 Agreement*) following Wacker's November 2007 Application for an Industrial Facilities Tax Exemption Certificate (*Exhibit 2- Application for Industrial Facilities Tax Exemption Certificate*). Subsequent Agreements were signed. However, the operative language in the Act 198 Agreement did not change:

> *"The applicant shall remain within the local unit during the period of time for which the abatement has been approved and, if the applicant relocates, substantially reduces employment and/or operations, or closes the facility, the applicant shall pay to the affected taxing units an amount equal to those taxes it would have paid had the abatement not been in effect."*

---

[3] It seems worthy of mention that given a court rule, whose purpose is to essentially elicit a response that either "admits" or "denies" a statement, Wacker's response to this straightforward proposition – "admit at the time you entered into the Act 198 Agreement with Defendant City you were the applicant for an Industrial Facility Exemption Certificate" – Wacker's response incorporated the term "applicant" 4 times, the term "meaning 3 times, and in the process rendered the term 'applicant" seemingly meaningless.

**(Exhibit 4-Act 198 Agreement, ¶5; Plaintiff Wacker's Complaint, Exhibit B, ECF No. 1, PageID.12-14, at ¶6).** Given the specific, unambiguous, and consistent language in the Act 198 Agreements entered into by Wacker in this regard, the City simply asked in RA #8 for Wacker's admission that it agreed to remain with the local unit during the period of time for which the tax abatement was approved by IFEC 2008," nearly a verbatim re-statement of the passage.

However, once again, Wacker engaged in argumentation over language not contained within the contract provision, by incorporating references to non-parties, and referencing purported transfers of the IFEC to a non-party, none of which is referenced in the request to admit nor the document that is specifically associated with it:

Wacker thus stated in response to RA #8:

**"ANSWER: Denied. In further response, ¶6 of the Act 198 Agreement provides that: 'The applicant shall remain with the local unit during the period of time for which the abatement has been approved ..." Wacker Neuson is specifically referred to in the Act 198 Agreement by way of the defined term "The Company." The Act 198 Agreement required "the applicant," as opposed to "The Company," to "remain with the local unit." While Wacker Neuson was "the applicant" at the time it entered into the Act 198 Agreement, it ceased being "the applicant" within the meaning of the Act 198 Agreement when the IFEC 2008 was transferred to TGW, which then replaced Wacker Neuson as "the applicant."**

The City recognizes Wacker's right to deny a stated proposition as untrue, so long as the denial is in good faith. Fed. R. Civ. P. 36(a)(4). This response, much like Wacker's rambling reply to RA #7, engages in an argumentative avoidance of the specific request, which betrays its duty of good faith under the rule.

Wacker engages in the same argumentative reply to RA #10. This request referred Wacker to the IFEC 2008, a single page document attached to its complaint as Exhibit A, ECF No. 1, PageID.11.

The IFEC 20008, issued by the Tax Commission on May 12, 2008, by its terms was to "*remain in force for a period of 12 year(s) for real and 12 year(s) for personal*" property, "*beginning December 31, 2008, and ending December 30, 2020.*". RA #10 merely asked Wacker to admit that it "*closed operation or your facility within Norton Shores, Michigan, before expiration of the period of time for which the tax abatement had been approved by the IFEC 2008.*"

The question could not be phrased any more specifically. It essentially asks Wacker to admit that it closed down its operations in Norton Shores before December 30, 2020. Firstly, obviously, Wacker has left the City. Secondly, obviously, December 30, 2020, has not yet arrived. Therefore, this should simply have been admitted.

But instead, Wacker presents a non-responsive argumentative statement:

> **"ANSWER: It is admitted only that, before expiration of the period of time for which the tax abatement had been originally approved by the IFEC 2008, the IFEC 2008 was transferred to TGW, which then replaced Wacker Neuson as "the applicant" for the remainder of the tax abatement period, and that TGW continued operations at the facility."**

(**Exhibit 6- Plaintiff/Counter-Defendant's Answers to Defendant/Counter-Plaintiff's First Requests for Admissions, RA#10**).

The City's RA#10 did not make any reference to "TGW" or invite any argument over any other business's application for an industrial facilities exemption certificate. It simply requested that Wacker acknowledge two things: that (1) it closed down its operations in Norton Shores (2) before expiration of the period of time approved by IFEC 2008. These are two objective factors.

Wacker's reply under Fed. R. Civ. P. 36 should have been an "Admit"; a "Denied"; a statement why Wacker can neither admit nor deny; or a statement that Wacker asserts a lack of knowledge as a reason for failing to admit or deny, but only if it

has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny. Fed. R. Civ. P. 36(a)(4). Instead it incorporates extraneous facts and then launches into an argumentative, non-responsive statement, contrary to the court rule.

The City's RA#12 requests Wacker to admit to the calculated amount of $951,346.94 in "*ad valorem property taxes you would have paid over the years covered by the IFEC 20008, had you not had the benefit of the IFEC 20008 for those years*".

Wacker replied:

**"ANSWER: Wacker Neuson lacks adequate information regarding the substance of this request, and therefore it is denied. In further response, the substance of this request is the subject of ongoing discovery."**

At first glance, this might appear as a permissible response, since a litigant may at times claim the inability to admit or deny based on a lack of information. However, Fed. R. Civ. P. 36(a)(4) states in this regard:

> "(4) ... The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

The City emphasizes two basic points. First, Wacker's response simply does not meet the requirements of the rule, since it does not state that it has made reasonable inquiry.[4]

[4] The City served interrogatories on Plaintiff Wacker, and specifically addressed Wacker's position on the City's invoiced amount of $951,346.94. Wacker claimed in its answers to interrogatories that it "*lacks sufficient information to determine whether this number is an accurate calculation of the property taxes that it allegedly 'would have paid over the years covered'* by the IFEC, and therefore Wacker Neuson does not agree with this proposition at this time." To the extent Wacker disagreed with this figure presented in Interrogatory #8, the City asked Wacker in Interrogatory #9 to state the dollar amount it believes is correct, to identify each individual relied upon for its information, and to identify each document with particularity

Secondly, Wacker's complaint contains Exhibits C & D, Defendant City's claw-back invoice to Wacker and its revised invoice to Wacker, respectively, with supporting data. (Wacker's complaint, ECF No.1, PageID.15-49). Despite having this substantial information available to it, about 32 pages worth of data, indeed having attached it to its complaint, Wacker makes no reference to it. Its responses simply ignore and fail to reciprocate the City's significant efforts to narrow/eliminate the issues.

Despite having the benefit of the City's calculations on the matter pertaining to the City' claim of what Wacker owes in taxes, and despite having been served with no less than one request for admission specifically addressing the matter, and two interrogatories specifically addressing the matter, the City has learned literally nothing from Wacker on its position. The totality of these factors makes Wacker's insufficient reply to the City's RA#12, entirely unacceptable.

WILLIAMS HUGHES PLLC

Dated: September 17, 2019

/s/ John M. Karafa

John M. Karafa (P36007)
Attorney for Def. City of Norton Shores
120 W. Apple Avenue
Muskegon, MI 49440
(231) 726-4857
johnkarafa@williamshugheslaw.com

containing the information it relied upon. Wacker's entire response to this interrogatory was "**See Answer to Interrogatory No. 9 above**." **(Exhibit 7- Wacker's Answers to Interrogatories 8 & 9).** Presumably it was referring instead to its answer to No. 8. In any event, its answers taken together show it has no alternative number, it has made no effort to calculate or ascertain it, and have not bothered to examine any document regarding it.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court via CM/ECF and served upon all counsel or parties of record via Electronic Notice on September 17, 2019.

/s/ John M. Karafa
John M. Karafa, Williams Hughes PLLC