UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WACKER NEUSON PRODUCTION
AMERICAS, LLC,

        Plaintiff/Counter-Defendant,

v

CITY OF NORTON SHORES,

        Defendant/Counter-Plaintiff.

Case No. 1:19-cv-00018-JTN-ESC

Hon.  Janet T. Neff

---

| VARNUM LLP | WILLIAMS HUGHES PLLC |
|---|---|
| Adam J. Brody  (P62035) | Douglas M. Hughes (P30958) |
| Jeffrey D. Koelzer (P78602) | Enrika L.F. McGahan (P55860) |
| Attorneys for Plaintiff/Counter-Defendant | John M. Karafa (P36007) |
| 333 Bridge St NW | Attorneys for Defendant/Counter-Plaintiff |
| PO Box 352 | 120 W. Apple Avenue |
| Grand Rapids, MI 49501-0352 | Muskegon, MI 49440 |
| (616) 336-6000 | (231) 726-4857 |
| ajbrody@varnumlaw.com | doughughes@williamshugheslaw.com |
| jdkoelzer@varnumlaw.com | johnkarafa@williamshugheslaw.com |

---

**PLAINTIFF/COUNTER-DEFENDANT WACKER NEUSON PRODUCTION AMERICAS, LLC'S RESPONSE TO DEFENDANT'S MOTION TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSIONS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ..........................................2

III. LAW AND ARGUMENT.......................................................................................3

   A.   Legal Standard ..............................................................................................3

   B.   Requests Nos. 1, 2, and 13: Wacker Neuson Properly Provided Qualified Admissions to Defendant's Improper Requests Regarding Contract Interpretation ...............................................................................4

   C.   Requests Nos. 5 and 14: Wacker Neuson Properly Denied Requests that Improperly Sought Admissions of Statutory Interpretation ....................7

   D.   Requests Nos. 6 and 7: Wacker Neuson Properly Admitted with Clarification and Provided Additional Information to Identify Related Issues in Dispute ...........................................................................9

   E.   Request No. 8: Wacker Neuson properly Denied the Request and Provided a Specific Explanation of the Reason for its Denial ..............................10

   F.   Request No. 10: Wacker Neuson Properly Made a Qualified, Partial Admission in Response to Defendant's Ambiguous Request................11

   G.   Request No. 12: Wacker Neuson Properly Indicated that it was Unable to Admit because it was Investigating the Matter Through Ongoing Discovery....................................................................................12

   H.   Wacker Neuson Should be Awarded Costs and Fees, and Defendant May Not Recover Any Expenses................................................................13

IV.  CONCLUSION .....................................................................................................13

# INDEX OF AUTHORITIES

**Cases**

*Reardon v. Kelly Servs., Inc.*,
    210 F. App'x 456 (6th Cir. 2006) ............................................................................ 6

*Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*,
    525 F.3d 409 (6th Cir. 2008) ................................................................................... 5

*United States v. Miller*,
    734 F.3d 530 (6th Cir. 2013) ................................................................................... 8

**Statutes**

MCL 207.557(1) ............................................................................................................ 5

MCL 207.566 ................................................................................................................. 8

MCL 207.566(1) ............................................................................................................ 8

MCL 207.572 ................................................................................................................. 7

**Other Authorities**

Plant Rehabilitation and Industrial Development Districts Act, Act 198 of 1974 .......... 7

**Rules**

FRCP 26(b)(1) ............................................................................................................... 3

FRCP 36(a)(1) ........................................................................................................... 1, 3

FRCP 36(a)(1)(A) .................................................................................................. 4, 5, 7

FRCP 36(a)(4) ............................................................................................................... 3

FRCP 36(a)(5) ............................................................................................................... 3

FRCP 37(5)(A) ......................................................................................................... 2, 13

FRCP 37(5)(B) ......................................................................................................... 2, 13

## I.  INTRODUCTION

This is a dispute between a manufacturing company, Plaintiff/Counter-Defendant, Wacker Neuson Production Americas, LLC ("Wacker Neuson"), and a municipality, Defendant/Counter-Plaintiff, City of Norton Shores. The sole issue is whether Wacker Neuson should have to repay certain tax abatements after Wacker Neuson's tax exemption certificate was transferred to a new manufacturer that moved into the facility at issue. The crux of this case is the proper interpretation of a contract between the parties.

Defendant contends that the contract required Wacker Neuson to remain at the facility for the entire term of the certificate in order to retain the tax benefits. That is not so. The only logically and legally sound interpretation of the contract is that it permitted a new entity to become "the applicant" under the contract by way of a transfer of the certificate. So long as a successor "applicant" finished out the term of the certificate, Wacker Neuson was entitled to retain the tax savings it accrued while it was "the applicant."

The present Motion concerns Wacker Neuson's responses to Defendant's Requests for Admissions. Some of the requests asked Wacker Neuson to admit to Defendant's paraphrased statements of certain contract language. The Federal Rules of Civil Procedure restrict requests for admissions to those relating to "facts, the application of law to fact, or opinions about either" or "the genuineness of any described documents." FRCP 36(a)(1). As such, these contract interpretation requests – a purely legal issue – are not proper under the Rules. Similarly, other requests asked Wacker Neuson to admit to Defendant's paraphrased version of certain Michigan statutory provisions, which are improper for the same reason. Other requests sought factual admissions but were ambiguously, inconsistently, or imprecisely worded in light of the factual issues in dispute in this case or in light of the definitions Defendant itself provided in its Requests for Admissions.

1

Rather than objecting to or flatly denying problematic requests, Wacker Neuson did its best to clarify its understanding of each request, specify defined terms, rectify any ambiguities, and put forth a good-faith answer to the requests. In many instances, Wacker Neuson went above and beyond its obligations under the Rules and explicitly stated its position on related issues, thereby illuminating the precise issues in dispute.

Late in the afternoon on Friday, September 13, Defendant's counsel sent a letter via email to Wacker Neuson's counsel challenging the sufficiency of the answers and requesting a response, but providing no deadline. On Monday, Wacker Neuson's counsel began preparing a response to the letter. However, on Tuesday, <u>only the second business day thereafter</u>, Defendant filed the present Motion, giving Wacker Neuson no reasonable opportunity to respond to the issues raised (for the first and only time) in the letter.

For the reasons set out below, Wacker Neuson's responses to the requests are more than adequate under the Rules and Defendant is not entitled to any relief. The Motion must be denied, and Wacker Neuson should be awarded its costs and fees in having to respond under Rule 37(5)(B). To the extent the Court is inclined to grant any part of the Motion, Defendant is not entitled to any costs or fees incurred, having failed to make a good faith attempt to resolve the dispute before seeking court intervention, as it was required to do under Rule 37(5)(A).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant served requests for admissions on July 22, 2019. See ECF No. 28-5, PageID 271 et seq. Wacker Neuson timely responded on August 21, 2019. See ECF No. 28-6, PageID 279 et seq. At 3:15 in the afternoon on Friday, September 13, Defendant's counsel sent via email a letter to Wacker Neuson's counsel claiming the responses to the Requests for Admission were deficient. **Exhibit A**, September 13, 2019 3:15 pm email forwarding letter from Atty Karafa. The letter requested a response but did not give any particular deadline for responding. On Monday,

the next business day, Wacker Neuson's counsel began preparing a substantive response to every item raised in the letter. Wacker Neuson had every intention of responding promptly and working in good faith with Defendant's counsel to resolve the dispute.

However, Wacker Neuson had no reasonable opportunity to do so. On Tuesday, September 17, only the second business day after Defendant's counsel's letter, Defendant filed the present Motion, requesting relief from the Court on the same issues raised (for the first and only time) in Defendant's Friday-afternoon letter. In between sending the letter and filing the Motion, Defendant attempted no further communications with Wacker Neuson's counsel, though a simple phone call could very likely have resolved the matter without Court intervention.

### III.    LAW AND ARGUMENT

#### A.    LEGAL STANDARD

Rule 36 permits parties to serve written requests for admission on other parties. FRCP 36(a)(1). The requests must be within the scope of discovery under Rule 26(b)(1) and relate to either "facts, the application of law to fact, or opinions about either" or "the genuineness of any described documents." *Id*. The responding party may make an unqualified admission, a denial, or a partial or qualified admission or denial. FRCP 36(a)(4). The responding party may also "assert lack of knowledge or information as a reason for failing to admit or deny" so long as the party indicates that is has made a reasonable inquiry into the matter but lacks sufficient information to enable it to admit or deny. *Id*. The responding party may also respond with an objection. FRCP 36(a)(5).

In essence, Defendant claims that Wacker Neuson should have responded to each request with only "admitted" or denied," rather than offering any explanation or qualification for its answers. Considering the imprecise, inconsistent wording of Defendant's requests, as well as the impermissible subject matter of many requests (i.e., not relating to facts or genuineness of

3

documents as required by Rule 36(a)(1)(A) and (B)), Wacker Neuson could have responded to nearly all requests with an objection or a simple denial. Instead, Wacker Neuson sought to ameliorate the problems caused by Defendant's deficient wording and improper subject matters by explicitly defining certain terms and assumptions in order to give precise, truthful answers - all in a good-faith effort to better define the matters in dispute.

### B. REQUESTS NOS. 1, 2, AND 13: WACKER NEUSON PROPERLY PROVIDED QUALIFIED ADMISSIONS TO DEFENDANT'S IMPROPER REQUESTS REGARDING CONTRACT INTERPRETATION

For Request Nos. 1, 2 and 13, Defendant asked Wacker Neuson to admit to certain paraphrased statements of provisions of the exemption certificate at issue, which is among the documents that make up the contract between the parties in this case. The requests and answers are as follows:

> **REQUEST TO ADMIT #1:**
> That IFEC 2008 certified your property at 1300 E. Mt. Garfield Road as a new industrial facility. MCL 207.551, et seq.
> **ANSWER:** **As an initial matter, the referenced document ("IFEC 2008") speaks for itself, and to the extent this proposition is inconsistent with the referenced document, the proposition is denied. Subject to the foregoing, it is admitted that the "IFEC 2008," as defined in Defendant's First Requests for Admissions, certified the property at 1300 E. Mt. Garfield Road as a new industrial facility.**
>
> **REQUEST TO ADMIT #2:**
> That IFEC 2008 was issued to be and remain in effect for twelve (12) years for real and personal property, commencing December 31, 2008, unless revoked by order of the State Tax Commission.
> **ANSWER:** **As an initial matter, the referenced document ("IFEC 2008") speaks for itself, and to the extent this proposition is inconsistent with the referenced document, the proposition is denied. Subject to the foregoing, it is admitted that the "IFEC 2008," as defined in Defendant's First Requests for Admissions, was issued to be and remain in effect for twelve (12) years for real and personal property, commencing December 31, 2008, unless revoked by order of the State Tax Commission.**
>
> **REQUEST TO ADMIT #13:**
> That the IFEC 2008 approved in your favor by Defendant City was for twelve (12) years.

4

> **ANSWER:** As an initial matter, the referenced document ("IFEC 2008") speaks for itself, and to the extent this proposition is inconsistent with the referenced document, the proposition is denied. Subject to the foregoing, it is admitted that the term of the "IFEC 2008," as defined in Defendant's First Requests for Admissions, was for twelve years.

As an initial matter, these are not requests to admit the genuineness of any particular documents, as permitted by Rule 36(a)(1)(B). Nor are they requests to admit any fact, application of law to the facts, or opinions about factual issues, as permitted by Rule 36(a)(1)(A). Instead, they are requests for admission about contract interpretation, which is a matter of law. *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) ("The proper interpretation of a contract is a question of law."). As such, these requests are not proper under the Rules.

Additionally, the wording of the requests is imprecise. Request No. 1 asked Wacker Neuson to admit "That IFEC 2008 certified your property...." The face of the certificate itself states that "the State Tax Commission hereby certifies" the property as a new industrial facility. Similarly, MCL 207.557(1) states that "the [state tax] commission shall determine whether the facility is a new industrial facility and otherwise complies with the provisions of the act." Thus, the State Tax Commission is the entity that certifies property as a new industrial facility, and that certification is reflected in the certificate. But Defendant asked Wacker Neuson to admit that the "IFEC 2008" (a defined term in Defendant's Requests for Admission) certified the subject property as a new industrial facility. Despite Defendant's imprecise wording, Wacker Neuson tried to cooperate and admit the request, as Wacker Neuson does not dispute the underlying fact that *the State Tax Commission* certified the subject property as a new industrial facility in 2008 and that the IFEC 2008 evidences this certification.

Requests Nos. 2 and 13 contain similar deficiencies. In Request No. 2, the referenced IFEC 2008 was issued by the State Tax Commission on May 12, 2008 and was to be in effect from December 31, 2008 until December 30, 2020, but the wording of the Request only reflects the December 31, 2008 commencement date. Request No. 13 states that the Defendant City approved the certificate; in reality, *the State Tax Commission* approved and issued the *certificate* itself, while *the City* approved the underlying *application*. While these may appear to be minor discrepancies, this case depends heavily on a proper interpretation of the text of the specific words used in contract documents.

Nevertheless, Wacker Neuson admitted each proposition, with the clarification that it did not intend to admit to anything that was not consistent with a proper reading of the plain language in the certificate at issue. Ultimately, this case hinges on a proper interpretation of the documents comprising the contract at issue, including the IFEC 2008 and Act 198 Agreement. As the Sixth Circuit has observed, under Michigan law a "court must consider the entirety of the contractual text whenever construing any portion of a contract. … An interpretation derived from a reading of the contract as a whole is preferred to an interpretation taken from a reading of a single provision in isolation." *Reardon v. Kelly Servs., Inc.*, 210 F. App'x 456, 459 (6th Cir. 2006).

As such, Wacker Neuson will not admit to any proposition that would purport to remove any portion of any contract document from this Court's consideration of the contract documents as a whole. To the extent Defendant is asking Wacker Neuson to stipulate to a paraphrased version of any contract provision in place of a proper interpretation of all relevant documents as a whole, Wacker Neuson must deny the request. But Wacker Neuson answered these requests as it did in a good-faith effort to identify areas of agreement on the interpretation of particular

provisions, while at the same time preserving its right to have this Court consider the entirety of all relevant documents for purposes of interpreting the contract.

### C. REQUESTS NOS. 5 AND 14: WACKER NEUSON PROPERLY DENIED REQUESTS THAT IMPROPERLY SOUGHT ADMISSIONS OF STATUTORY INTERPRETATION

For Requests Nos. 5 and 14, Defendant asked Wacker Neuson to admit to certain paraphrased statements of Michigan statutes. These are purely legal propositions, and consequently not a proper subject for requests to admissions. *See* FRCP 36(a)(1)(A) and (B). Just as with Defendant's paraphrased statements of certain provisions of the certificate, Wacker Neuson will not stipulate to any statement that would purport to remove any portion of the applicable law from this Court's consideration. To that end, Wacker Neuson answered that it would rely on a proper interpretation of the statute under Michigan law.

As it happens, Defendant's paraphrasing does not represent a proper interpretation of the law. Request No. 5 asks Wacker Neuson to admit that MCL 207.572(1) requires the entry of a written agreement with Defendant "governing the tax exemptions which you applied for." While MCL 207.572 does require the execution of a written agreement between the recipient of an industrial facilities exemption certificate and the local government unit, and while MCL 207.572 outlines certain subject matter that should be included in that agreement, it is overbroad and an overreach to claim that the agreement "govern[s] the tax exemptions which you applied for." More accurately, Michigan law, including the Plant Rehabilitation and Industrial Development Districts Act, Act 198 of 1974 as amended, governs the exemption for which Wacker Neuson applied. Notably, this lawsuit itself relates to the proper interpretation and enforcement of the contract between Wacker Neuson and the Defendant City, but has no bearing whatsoever on the underlying property tax exemption, which is still in full force and effect in favor of the

7

property's new owner. **Exhibit B,** Industrial Facilities Exemption Certificate 2008-038 Amended.

Similarly, Request No. 14 asks Wacker Neuson to admit "That twelve (12) years was the longest duration of time permitted for issuance of an Industrial Facilities Exemption Certificate under Michigan law, MCL 207.566." However, the statute itself indicates that the certificate can be in effect for not more than twelve (12) years "after the completion of the facility." MCL 207.566(1). It is unclear, without further research and legal analysis, whether the certificate period can be greater than twelve (12) years such that it could also cover the pre-completion, construction period of the project. However, the State Tax Commission believes that such exemptions can exceed twelve years to include a period of construction for the project. See **Exhibit** C, State Tax Commission document entitled "Frequently Asked Questions, Plant Rehabilitation and Industrial Development Act (Industrial Facilities Exemption)" version 8/21/2018, p 5, Question 11.

Even if Defendant's paraphrasing had accurately summarized Michigan law, it is difficult to discern how an admission to Defendant's paraphrasing would benefit the parties and the Court. Would Defendant ask this Court to ignore the text of the statutes and judicial opinions interpreting them, based on admission regarding a portion of each statute? In light of the Court's obligation to interpret statutes according to their plain text and as a whole, these requests for admission do nothing to narrow the issues in the case, and it is no wonder that the Rules do not allow for requests to admit purely legal propositions. *United States v. Miller*, 734 F.3d 530, 540 (6th Cir. 2013) (courts consider "the language and design of the statute as a whole in interpreting the plain meaning of statutory language").

8

### D. REQUESTS NOS. 6 AND 7: WACKER NEUSON PROPERLY ADMITTED WITH CLARIFICATION AND PROVIDED ADDITIONAL INFORMATION TO IDENTIFY RELATED ISSUES IN DISPUTE

For Request No. 6, Defendant complains that Wacker Neuson provided additional information and explained its answer. The request asked Wacker Neuson to admit "That the only parties to the Act 198 Agreement were you and Defendant City," emphasis added. Wacker Neuson answered:

> ANSWER: It is admitted that, at the time the original "Act 198 Agreement," as defined in Defendant's First Requests for Admissions, was executed, the only signatories to the Act 198 Agreement were Wacker Neuson and the City. In further response, Wacker Neuson lacks any information regarding what agreement the City has required from the new applicant, TGW Systems, Inc. ("TGW"), including whether TGW has become a party to the same Act 198 Agreement or entered into a new agreement.

Note that Defendant's request uses the past tense "were" and not the present tense "are." Wacker Neuson's answer explains a very simple concept: when the agreement was executed, there were only two parties, but Wacker Neuson lacks sufficient information to say whether TGW became a party to that agreement in any sense at a later time. This is a complete, truthful, unambiguous answer. Wacker Neuson's answer not only identified areas of agreement between the parties, it also identified further related areas of potential disagreement. By answering in this fashion, Wacker Neuson has attempted to narrow and focus the issues in dispute: there is no dispute about who the original parties were, but there may be a dispute about the identity of parties at other points in time. It appears that Defendant simply does not like the substance of this answer, and would prefer that Wacker Neuson agree to the over-simplified proposition that Defendant put forth.

Similarly, for Request No. 7, Defendant complains that Wacker Neuson provided additional information alongside its admission, rather than simply agreeing to Defendant's ambiguous wording. The request asked Wacker Neuson to admit "That at the time you entered

9

into the Act 198 Agreement with Defendant City you were the applicant for an Industrial Facility Exemption Certificate." Wacker Neuson answered:

> ANSWER: It is admitted that Wacker Neuson was "the applicant" within the meaning of the Act 198 Agreement at the time it entered into the Act 198 Agreement. However, it is denied that the meaning of the term "the applicant" within the Act 198 Agreement was static. Wacker Neuson ceased being "the applicant" within the meaning of the Act 198 Agreement when the IFEC 2008 was transferred to TGW, which then replaced Wacker Neuson as "the applicant."

Once again, Wacker Neuson admitted the proposition while clarifying its understanding of the question, particularly that it understood the proposition to be using the term "the applicant" as a contract term with a specific meaning and that the proposition was referring to the time that the agreement was executed. Wacker Neuson went on to provide additional information in an effort to identify a potential related area of disagreement; in this case, Wacker Neuson flagged a potential dispute about the interpretation of the term "the applicant." If Defendant does not care to be apprised of potential areas of disagreement, then it may disregard this additional information.

### E.  REQUEST NO. 8: WACKER NEUSON PROPERLY DENIED THE REQUEST AND PROVIDED A SPECIFIC EXPLANATION OF THE REASON FOR ITS DENIAL

Request No. 8 asked Defendant to admit "That pursuant to your Act 198 Agreement you agreed to remain with the local unit during the period of time for which the tax abatement was approved by the IFEC 2008." Wacker Neuson denied the request and provided a precise explanation of the reasons for the denial, which specifically identified areas of disagreement regarding contract interpretation:

> ANSWER: Denied. In further response, ¶6 of the Act 198 Agreement provides that: "The applicant shall remain with the local unit during the period of time for which the abatement has been approved …." Wacker Neuson is specifically referred to in the Act 198 Agreement by way of the defined term "The Company." The Act 198 Agreement required "the applicant," as opposed to "The Company," to "remain with the local unit." While Wacker Neuson was "the applicant" at the time it entered into the Act 198 Agreement, it ceased being "the applicant" within

10

the meaning of the Act 198 Agreement when the IFEC 2008 was transferred to TGW, which then replaced Wacker Neuson as "the applicant."

Defendant's complaints regarding this answer defy all reason. Wacker Neuson denied the request, then provided a detailed explanation of the reason for its denial, which specifically explained Wacker Neuson's interpretation of the contract, thereby identifying potential areas of dispute between the parties. This answer is not deficient in any way.

### F. REQUEST NO. 10: WACKER NEUSON PROPERLY MADE A QUALIFIED, PARTIAL ADMISSION IN RESPONSE TO DEFENDANT'S AMBIGUOUS REQUEST

Request No. 10 asked Wacker Neuson to admit "That you closed operation of your facility within Norton Shores, Michigan, before expiration of the period of time for which the tax abatement had been approved by the IFEC 2008." This statement is ambiguous; it could be asking whether Wacker Neuson *stopped its own operations* at the facility, or it could be asking whether *the facility itself closed*, such that no entity conducted operations there. The difference is important in this case. Notably, Defendant itself specifically defined "facility" to mean "Plaintiff Wacker's 168,000 square foot manufacturing and warehouse Facility described in paragraph 21 of [the] Complaint." ECF No. 28-5 PageID 273. In other words, "facility" refers to a physical building, as opposed to Wacker Neuson's operations within that building.

As it happens, Wacker Neuson ceased its own operations at the facility, but TGW Systems, Inc., the transferee of the certificate at issue, immediately commenced operations at the same facility thereafter. Therefore, the *facility* never closed, but Wacker Neuson stopped its own operations and TGW began operating at the facility. Wacker Neuson answered accordingly. Once again, it seems Defendant simply does not like the substance of this answer because it hurts Defendant's case.

11

G. **REQUEST NO. 12: WACKER NEUSON PROPERLY INDICATED THAT IT WAS UNABLE TO ADMIT BECAUSE IT WAS INVESTIGATING THE MATTER THROUGH ONGOING DISCOVERY**

Request No. 12 asked Wacker Neuson to admit the amount of the ad valorem property taxes at issue in this dispute. Wacker Neuson answered by stating that it lacked sufficient information to answer, denying the request by default, and indicating that the substance of the request is the subject of ongoing discovery. Defendant complains that this answer is deficient because Wacker Neuson did not say the magic words and state that it has made a "reasonable inquiry" into the matter. Yet the response plainly stated that Wacker Neuson was pursuing necessary information through ongoing discovery. As such, even though the answer did not contain the specific phrase "reasonable inquiry," it made clear that a reasonable inquiry was ongoing through the discovery process in this case.

Defendant also contends that the Wacker Neuson had certain data available to it from which it could form an opinion regarding the value of taxes in dispute, referencing Exhibits C and D to the Complaint. However, the data Defendant references simply assumes certain millage rates and taxable values for the property. With only this information, Wacker Neuson is unable to verify that these taxable values and millage rates used were appropriate or correct. This is particularly important given that the face of those Exhibits on their face indicate that either the Defendant miscalculated the damages or improperly assessed Wacker Neuson for taxes Wacker Neuson did not owe during the time period at issue. Wacker Neuson has requested information trying to clarify these issues in discovery. See **Exhibit D**, Wacker Neuson's First Interrogatories and Requests for Production of Documents, at Int. No. 8 and Prod. Req. Nos. 1, 4; **Exhibit E**, Wacker Neuson's Second Request for Production of Documents, at Req. No. 3. In short, this response was perfectly appropriate in light of the status of this case.

12

### H. WACKER NEUSON SHOULD BE AWARDED COSTS AND FEES, AND DEFENDANT MAY NOT RECOVER ANY EXPENSES

For the foregoing reasons, Defendant's Motion should be denied and Wacker Neuson should be awarded its costs and fees in having to respond under FRCP 37(5)(B). To the extent the Court is inclined to grant any part of the Motion, Defendant cannot be awarded any expenses. There can be no doubt that by raising the dispute for the first time in a Friday late-afternoon letter, giving no deadline for a response, making no follow up communications, and filing its Motion on the second business day thereafter, Defendant did not attempt "in good faith to obtain the disclosure or discovery without court action." FRCP 37(5)(A).

## IV. CONCLUSION

Defendant's Motion should be denied, and Wacker Neuson should be awarded its costs and fees incurred in having to respond.

VARNUM LLP

Attorneys for Plaintiff/Counter-Defendant

Dated: October 1, 2019                By:    */s/ Adam J. Brody*
        Adam J. Brody (P62035)
        Jeffrey D. Koelzer (P78602)
BUSINESS ADDRESS & TELEPHONE:
        Bridgewater Place
        P.O. Box 352
        Grand Rapids, MI 49501-0352
        (616) 336-6000
        ajbrody@varnumlaw.com
        jdkoelzer@varnumlaw.com