UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

---

| | |
|---|---|
| WACKER NEUSON PRODUCTION AMERICAS, LLC, a Wisconsin limited liability company,<br><br>        Plaintiff,<br>v<br><br>CITY OF NORTON SHORES, a Michigan Municipal Corporation,<br><br>        Defendant. | Case No. 1:19-cv-00018-JTN-ESC<br><br>**HON. JANET T. NEFF** |

| | |
|---|---|
| VARNUM LLP<br>Adam J. Brody (P62035)<br>Jeffrey D. Koelzer (P78602)<br>Attorneys for Plaintiff<br>333 Bridge St NW<br>PO Box 352<br>Grand Rapids, MI 49501-0352<br>(616) 336-6000 | GRAVIS LAW, PLLC<br>Douglas M. Hughes (P30958)<br>Enrika L.F. McGahan (P55860)<br>John M. Karafa (P36007<br>Attorneys for Plaintiffs<br>120 W. Apple Avenue<br>Muskegon, MI 49440<br>(231) 726-4857 |

**DEFENDANT CITY OF NORTON SHORES' RESPONSE IN OPPOSITION TO PLAINTIFF WACKER NEUSON PRODUCTION AMERICAS, LLC'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER TO COUNTERCLAIM**

Now comes Defendant/Counter-Plaintiff, City of Norton Shores **("City")**, and for its Response In Opposition to the *Motion For Leave To File First Amended Answer To Counterclaim* (ECF No. 63) and *Brief In Support* (ECF No. 64) filed February 25, 2020, by Plaintiff/Counter-Defendant, Wacker Neuson Production Americas, LLC **("Wacker Neuson Production")**, states:

1. Wacker Neuson Production seeks leave to file a "*First Amended Answer to the Counterclaim*" pursuant to Fed. R. Civ. P. 15(a)(2). (Wacker Neuson Production's motion, ECF No. 63, PageID. 425).

2. The City agrees with the standard generally governing motions to amend pleadings advanced in Wacker Neuson Production's motion and brief, that "*the court should freely give leave when justice so requires.*" *Jackson v Cleveland*, 925 F.3d 793, 809 (6th Cir. 2019); the corollary being, of course, also that such motions must be denied unless justice requires, such as when, for example, the proposed amendments would be futile, or there is undue delay, bad faith, dilatory motive, or factors unduly prejudicing the opposing party if the amendment is allowed. *Forman v Davis*, 371 U.S. 178, 182 (1962).

3. Wacker Neuson Production makes the remarkable claim in its brief that "*At the time of filing its Answer,[1] the current leadership at WNPA was not aware that Wacker Corporation was the original contracting party and certificate applicant and that WNPA only became the applicant several years later.*" (ECF No. 64, PageID.431)

4.  On the premise that it has been heretofore unaware of who the original contracting party was and to whom the State of Michigan issued a 12 year Industrial Facilities Exemption Certificate in 2008, Wacker Neuson Production seeks leave to amend its Answer to change, for example, its admissions over its contract obligations to the City, and its significant tax abatement benefits received.

5. Wacker Neuson Production claims in its proposed amended pleadings that it, Wacker Neuson Production, is a separate corporate entity, distinct in the context of the procedural history underlying this contract action, from its parent company,

---

[1] (May 31, 2019, ECF No. 22, PageID. 232-246).

"*Wacker Neuson Corporation, which used to be known as Wacker Corporation*".[2]

6. By seeking to amend its original answer filed in May 2019, Wacker Neuson Production attempts an eleventh hour change of strategy in an effort to permit the singular corporate structure of Wacker Corporation, Wacker Neuson Productions, and Wacker Neuson Production Americas, LLC, to avoid paying to the City a portion (*about $215,113.35*) of its total contractual liability (about $1,000,000.00).

7. The proposition advanced by Wacker Neuson Production that it only recently discovered that it was not "*the original contracting party and certificate applicant*", is contradicted by the procedural history underlying the parties' contractual and commercial relationship, and therefore should be denied on the basis of undue delay, dilatory motive, and the effect of unduly prejudicing the City. *Forman v Davis*, 371 U.S. 178, 182 (1962).

8. The proposition advanced by Wacker Neuson Production that it is a separate and distinct entity from "*Wacker Neuson Corporation, which used to be known as Wacker Corporation*" for purposes of its total liability to the City on its contract breaches is contradicted by evidence thus far received in discovery, and therefore the motion should be denied as futile. *Id*.

9. In the event Wacker Neuson Production's motion for leave to amend is granted, the City requests the opportunity to amend its counterclaim allegations to address the plaintiff's claims, and for a period of discovery to address the issues created by Wacker Neuson Production's motion for leave to amend.

10. Wacker Neuson Production operated at all material times as merely a continuing business enterprise of "*Wacker Neuson Corporation (the "Member"), being the*

---

[2] Wacker Neuson Production's Brief In Support, ECF No. 64, PageID.431)

3

*sole member of Wacker Neuson Production Americas LLC, a Wisconsin limited liability company (the "Company")."* **Exhibit 6**- Wacker's Organizational Documents).

11. Wacker Neuson Production acknowledges that it *"is a subsidiary of Wacker Neuson Corporation, which used to be known as Wacker Corporation."* (Wacker's Brief, ECF No. 64, PageID. 431).

12. Wacker Neuson Production further acknowledges that in 2007 *"Wacker Corporation was the original applicant for the certificate at issue"* and in the process entered into an Act 198 Agreement with the City. (Wacker's Brief, Exh. B, ECF No. 64, PageID. 454-455).

13. This diversity action, filed January 10, 2019, arises from the parties' former relationship within the City of Norton Shores, where Wacker Neuson Production developed and operated an industrial facility at 1300 E. Mt. Garfield Road.

14. During its business operations Wacker Neuson Production received significant tax abatements approximating $100,000.00 annually from the City, pursuant to the authority of Act 198 of the Public Acts of 1974 ("**Act 198**"), and its contract with the City.

15. On May 1, 2007, and pursuant to Act 198, the City, by an adopted Resolution, designated property within its jurisdiction at 1300 E. Mt. Garfield Road an Industrial Development District. (**Exhibit 1**- Resolution).

16. On November 1, 2007, Wacker Corporation applied the City and to the State of Michigan Tax Commission for an Industrial Facilities Tax Exemption Certificate (**Exhibit 2**- Wacker's November 1, 2007 "**Application for Industrial Facilities Tax Exemption Certificate**").

4

17. Wacker Corporation's application was made pursuant to Act 198 which governs Plant Rehabilitation and Industrial Development Districts, MCL 207.551 et seq.

18. The State Tax Commission is the ultimate authority in issuing Industrial Facilities Tax Exemptions to business concerns, and before a certificate can be issued the statutory scheme requires the existence of an agreement between the affected municipality and the eligible business relating to the respective rights and obligations. MCL 207.572 (1).

19. Therefore, in conjunction with its application for an Industrial Facilities Tax Exemption Certificate, Wacker Corporation entered into a contract with the City which set forth terms and conditions pertaining to Wacker's tax abatement benefits and privileges. MCL 207.572 (1). (**Exhibit 3- Act 198 Agreement**).

20. On May 12, 2008, the State of Michigan Tax Commission granted Wacker's application for an Industrial Facility Exemption Certificate. (hereafter "**IFEC 2008**"). (**Exhibit 4- IFEC 2008**).

21. The IFEC 2008 issued pursuant to Act 198, by its terms, was to remain in effect for 12 years for both real and personal property, commencing December 31, 2008, and ending December 30, 2020.

22. Wacker Corporation committed under its Act 198 Agreement with the City to "*remain with the local unit during the period of time for which the abatement has been approved …*", *i.e*. until December 30, 2020. *(***Exhibit 3-Act 198 Agreement, ¶5***).*

23. Paragraph 5 of the Act 198 Agreement also stated the remedies to the City in the event Wacker Corporation did not remain operating its business within the City, to wit: "*and, if the applicant relocates, substantially reduces employment and/or*

5

*operations, or closes the facility, the applicant shall pay to the affected taxing units an amount equal to those taxes it would have paid had the abatement not been in effect*." **(Exhibit 3-Act 198 Agreement, ¶5**).

24. Wacker Corporation subsequently operated its industrial facility at 1300 Mt. Garfield Road, within the City, and received real and personal property tax abatements approximating $100,000.00 during each year of its operations.

25. However, in breach of its commitment under the Act 198 agreement to remain in the City for at least 12 years, i.e. until December 31, 2020, Wacker Corporation pulled anchor on its operations within the City and relocated to Wisconsin.

26. Pursuant to the remedies provision of the parties' Act 198 Agreement, Wacker became obligated to the City in an amount commensurate with "*those taxes it would have paid had the abatement not been in effect*." **(Exhibit 3-Act 198 Agreement, ¶5**).

27. The City issued invoice #253012 dated September 19, 2018, to "Wacker Neuson Corp." in the amount of $966,943.65, representing the amount owed by Wacker to the City pursuant to the "*IFT Clawback*". (**Exhibit 5**-Wacker Neuson Production's Complaint, ECF No. 1, ¶29, PageID. 5, referencing complaint Exhibit C, Invoice and attached supporting data from the City, PageID.15-30).

28. On November 7, 2018, after telephone exchanges between City Administrator, Mark Meyers, and Wacker Neuson Production Finance Director, Ryan Gile, following as well Wacker's review of the City's initial invoice and its proposed revisions based on setoff amounts to which it believed to be entitled, the City issued its *revised invoice* #253015 to Wacker, in the amount of $951,346.94, along with supporting data.

29. The City's revised invoice reflected a "*reduction based on the removal of four*

6

*months of the winter tax bill calculated from the August 31, 2017 closing date through December 31, 2018.*" (**Exhibit 5**-Wacker Neuson Production's Complaint, ECF No. 1, ¶30, PageID. 5, referencing complaint Exhibit D, Invoice and attached supporting data from the City, PageID.31-49).

30. At all material times Wacker, by any of its designations (Wacker Corporation, Wacker Neuson Corporation, Wacker Neuson Production Americas, LLC) has maintained its principal place of business at N92 W15000 Anthony Avenue, Menominee Falls, Wisconsin 53051. (**Exhibit 2**- Wacker's November 1, 2007 "Application for Industrial Facilities Tax Exemption Certificate"; **Exhibit 3-**Act 198 Agreement**; Exhibit 4**- IFEC 2008**; Exhibit 5**-Wacker Neuson Production's Complaint, ECF No. 1, ¶1, PageID. 1; **Exhibit 6**- Wacker's Organizational Documents; See also **Exhibit 9** – City Administrator Mark Meyers Dep Tr. pp. 55-60).

31. As the City notes in paragraph 3, supra, Wacker Neuson Production's Brief In Support of Its Motion For Leave to File states in part that "*At the time of filing its Answer,[3] the current leadership at WNPA was not aware that Wacker Corporation was the original contracting party and certificate applicant and that WNPA only became the applicant several years later.*" (ECF No. 64, PageID.431)

32. Wacker Neuson Production avers further that – "*In fact, the first time WNPA viewed the original 2007 and 2008 contract documents between Wacker Corporation and the City was when the City attached them to a motion in September 2019. ECF Nos. 28 and 29.*" (ECF No. 64, PageID.433)(emphasis added).

---

[3] (May 31, 2019, ECF No. 22, PageID. 232-246).

7

33. Moreover, Wacker Neuson Production informs this Court that it was not formed as a subsidiary of Wacker Neuson Corporation until 2010 (Plaintiff Wacker's Brief, ECF No. 64, PageID.431).

34. However, in its initial complaint filed January 10, 2019, Plaintiff Wacker Neuson Production, who now argues it did not even exist until 2010, attached as Complaint Exhibit A the <u>May 28, 2008</u> letter from the State of Michigan and the Industrial Facility Exemption Certificate it issued to "<u>Wacker Corporation</u>" effective by its stated terms <u>December 31, 2008.</u>

35. It is unreasonable for Wacker Neuson Production to claim it was unaware that it was not a party to applications, contracts, and documents executed in 2007/2008, given its current argument that it did not even exist until 2010.

36. In its initial complaint Wacker Neuson Production acknowledged, indeed alleged, that it committed to developing the industrial facility in the City in 2007, and received from the State Tax Commission the Industrial Facilities Tax exemption Certificate #2008-038), beginning December 31, 2008. (**Exhibit 5**-Wacker Neuson Production's Complaint, ECF No. 1, ¶¶7-11, PageID. 2).

37. Wacker Neuson Production further specifically averred that "*Between the years of 2007 and 2009, Wacker Neuson made a significant investment in the City*;" and that it "*fulfilled its commitment to construct a 168,000 square foot manufacturing and warehouse facility (the "facility") at 1300 E. Mt Garfield Road in the City, but it also increased its initially-proposed investment from $7.5 million to approximately $9.5 million*"; and further emphasized how it "…*made this critical investment during the Great Recession of 2007* …" (**Exhibit 5**-Wacker Neuson Production's Complaint, ECF No. 1, ¶¶7-11, PageID. 2).

38. Wacker Neuson Production also attached to its initial complaint a letter to the City outlining its position in objection to the claw back attempt of the City to recapture abated taxes following Wacker Neuson Production's shut down in Norton Shores, and nowhere is there any reference to a time frame of 2008 to 2010 pre-dating its existence. (**Exhibit 5**-Wacker Neuson Production's Complaint, ECF No. 1, exhibit E, PageID. 51-532).

39. Moreover, the City sent an initial invoice to Wacker in September 2018, referencing liability for abated taxes commencing 2008, and Wacker Neuson Production responded with proposed revisions to the amounts applicable to the winter tax bill calculated in 2017/2018, while never raising any issue as to the commencement date in 2008, 2 years before its instant motion clams it even existed. **(Exhibit 5**-Wacker Neuson Production's Complaint, ECF No. 1, exhibit D, PageID.31-49; Exhibit 7- Gile dep. Tr. pp. 37,43, 47).

40. In his deposition on November 20, 2019, 2 months after Wacker Neuson Production America, LLC, claims to have first seen *the original 2007 and 2008 contract documents between Wacker Corporation and the City*, Wacker's Chief Operating Officer (COO), Ryan Gile, never even hinted that Wacker Neuson Production America, LLC was not the same entity that applied for the tax abatements and entered into the 2007 Act 198 Agreement with the City; in fact, Mr. Gile acknowledged that calculating the property tax abatements is not uncomplicated since "*2008, that goes a long way back*." (Exhibit 7- Gile dep. Tr. pp.47).

41. Further, COO Ryan Gile was asked why he disagreed with the invoiced amounts

9

from the City to Wacker for unpaid taxes, to which he responded "*Because they still get all of the benefits for us building a building in 2008…*"(Exhibit 7- Gile dep. Tr. pp.48; see also, pp. 49, see also pp. 64-75).

42. Wacker files taxes as a "consolidated U.S. entity". (**Exhibit 7-** Gile dep. Tr. pp.13).

43. COO Gile refused to acknowledge that Wacker Neuson benefitted at a rate of about $100,000.00 annually from tax abatements while it operated in Norton Shores, stating "*No, they did not benefit*" (Exhibit 7- Gile dep. Tr. pp. 49-51).

44. But that is not what COO Gile had earlier emphasized to a prospective buyer of Wacker Neuson's property in an April 27, 2018 email to the financial director of another company seeking to purchase Wacker's assets, wherein Gile informed "*… One other item you may not be aware of is the property TGW is buying was approved for a significant tax abatement, **we have saved nearly $950,000.00 over the past 10 years** and there is still 2 years left on the abatement program which your company might be eligible for …*" (**Exhibit 7**- Gile dep. Tr. pp. 94).

45. In its answers to the City's Interrogatories regarding the "*Industrial Facilities Tax (IFT) exemption certificate (Certificate #2008-038, the "Certificate")* referenced in its complaint Wacker Neuson Production acknowledged in part that it "*submitted an application some time prior to May 12, 2008. The certificate was issued on May 12, 2008.*" (**Exhibit 8-** Answers to Interrogatory #4, page 5).

46. Further, Wacker Neuson Production explained in response to Interrogatory #5 that "*Lawrence O'Toole, Chief Financial Officer of Wacker Neuson Corp, Managing Member of Wacker Neuson Production Americas, LLC*" is the one who signed the Act 198 Agreement on its behalf I January 2011, though further acknowledging that,

10

"*upon information and belief Wacker Neuson entered into the Agreement on or around May 12, 2008, when the Certificate was issued*." (**Exhibit 8-** Answers to Interrogatory #5, page 5, see also answers to #5(d), #7).

47. In fact, Wacker Neuson Production even cites to the Industrial Facilities Exemption Certificate No. 2008-032, dated <u>May 12, 2008</u>, the Act 198 Agreement with the City <u>dated 2008</u>, as documents supporting its claim of contract breach against the City, documents in existence at least 2 years before it existed, by its present argument. (**Exhibit 8-** Answers to Interrogatory #10, pp. 8-9)

48. Wacker Neuson Production further acknowledges that it "*is a subsidiary of Wacker Neuson Corporation, which used to be known as Wacker Corporation.*" (Wacker's Brief, ECF No. 64, PageID. 431).

49. Wacker Neuson Production further acknowledges that in 2007 "*Wacker Corporation was the original applicant for the certificate at issue*" and in the process entered into an Act 198 Agreement with the City. (Wacker's Brief, Exh. B, ECF No. 64, PageID. 454-455).

50. For all of the above reasons, Wacker Neuson Production Americas, LLC's motion for leave to amend its responsive pleadings, is not supported by the procedural history of this action, and represents a late attempt to merely change its legal argument, a futile one, as a desperate measure in mitigation of its contractual liabilities.

51. In support of this response, City of Norton Shores relies upon all pleadings of record, its supporting Brief, all exhibits attached to this motion, and any other evidence received by the Court on the issues presented.

**WHEREFORE**, Defendant/Counter-Plaintiff City of Norton Shores requests the entry of an order denying Plaintiff/Counter-Defendant Wacker Neuson Production Americas, LLC's Motion for Leave to Amend its Answer to the City's Counterclaim, and alternatively, grant to the City of Norton Shores any further relief to which it is entitled, including an amendment of the scheduling order permitting discovery on the issues raised by Wacker Neuson Production's motion, and any further relief to which to which the City is found to be entitled, including its costs and fees incurred.

GRAVIS LAW, PLLC

Dated: March 11, 2020

　/s/ John M. Karafa　　　　　　　
John M. Karafa (P36007)
Attorney for Def. City of Norton Shores
120 W. Apple Avenue
Muskegon, MI 49440
(231) 726-4857
jkarafa@gravislaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court via CM/ECF and served upon all counsel or parties of record via Electronic Notice on March 11, 2020.

　/s/ John M. Karafa　　　　　　　
John M. Karafa, Gravis Law, PLLC