# EXHIBIT 8

# WACKER NEUSON'S ANSWERS TO INTERROGATORIES



## VARNUM
### ATTORNEYS AT LAW

Bridgewater Place | Post Office Box 352
Grand Rapids, Michigan 49501-0352
Telephone 616 / 336-6000 | Fax 616 / 336-7000 | www.varnumlaw.com

**Jeffrey D. Koelzer**

Direct 616 / 336-6488
jdkoelzer@varnumlaw.com

September 4, 2019

John M. Karafa                                  *Via First Class Mail*
WILLIAMS HUGHES, PLLC
120 W. Apple Ave.
Muskegon, MI 49440

> **Re:**   *Wacker Neuson v Norton Shores*

Dear John:

Enclosed please find Wacker Neuson's Answers to Norton Shores' First Interrogatories, Wacker Neuson's Answers to Norton Shores' First Requests for Production of Documents, along documents that have been bates labeled WN0011-WN0020.

Please note that this set of discovery responses has only been signed by Plaintiff/Counter-Defendant's counsel, and that we will forward you an executed signature page as soon as we receive the same from our client.

Please let me know if you have any questions about the foregoing.

Very truly yours,

**VARNUM**

Jeffrey D. Koelzer

JDK/sjm
Enclosures

15337517_1.docx

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WACKER NEUSON PRODUCTION
AMERICAS, LLC,

                    Plaintiff/Counter-Defendant,

v

CITY OF NORTON SHORES,

                    Defendant/Counter-Plaintiff.

Case No. 1:19-cv-00018-JTN-ESC

Hon.  Janet T. Neff

| VARNUM LLP | WILLIAMS HUGHES PLLC |
|---|---|
| Adam J. Brody  (P62035) | Douglas M. Hughes (P30958) |
| Jeffrey D. Koelzer (P78602) | Enrika L.F. McGahan (P55860) |
| Attorneys for Plaintiff/Counter-Defendant | John M. Karafa (P36007) |
| 333 Bridge St NW | Attorneys for Defendant/Counter-Plaintiff |
| PO Box 352 | 120 W. Apple Avenue |
| Grand Rapids, MI 49501-0352 | Muskegon, MI 49440 |
| (616) 336-6000 | (231) 726-4857 |
| ajbrody@varnumlaw.com | doughughes@williamshugheslaw.com |
| jdkoelzer@varnumlaw.com | johnkarafa@williamshugheslaw.com |

## PLAINTIFF/COUNTER-DEFENDANT'S ANSWERS TO DEFENDANT/COUNTER-PLAINTIFF'S FIRST INTERROGATORIES

NOW COMES Plaintiff/Counter-Defendant, Wacker Neuson Production Americas, LLC ("Wacker Neuson"), by and through its attorneys Varnum LLP, and for its answers to Defendant/Counter-Plaintiff's First Interrogatories states as follows:

## INTERROGATORIES TO PLAINTIFF WACKER NEUSON

**INTERROGATORY 1:** Identify each and every person by name, address, telephone or cell phone number, and employment title and address, who answered or assisted with answering any one or more of these interrogatories, and further identify each interrogatory, by reference to its number, that each named individual answered or assisted in answering.

**ANSWER:**

**Ryan Gile, Chief Operating Officer of Wacker Neuson, c/o Varnum.   Mr. Gile assisted in answering each of the below interrogatories.**

**INTERROGATORY 2:** With regard to paragraphs 17 and 18 of your complaint (ECF No. 1) dated January 10, 2019, wherein you generally allege that the term *"applicant" in the "Act 198 Agreement"* describes some person or entity other than Plaintiff Wacker, and more particularly as to your allegation in paragraph 18 that the *"Agreement requires the `applicant,' but not the 'Company,' to remain in the City for the duration of the abatement period"*, state with particularity:

    a.    The identification of each individual whose information you relied upon in any way to make the assertion in your complaint that the term "applicant" does not describe Plaintiff Wacker, and for each identified individual state his/her complete name, address, occupation, and telephone/cell number.

    b.    How the information supporting your allegation in paragraph 18 of your complaint was communicated to you from each of the individuals disclosed in response to the preceding sub-part (a), for example, in person, by phone, by written document, etc.

    c.    The identification by title, date, and author of each and every document whose content you relied upon in support of your allegation in paragraph 18 of your complaint that the *"Agreement requires the 'applicant,' but not the `Company,' to remain in the City for the duration of the abatement period"*.

**ANSWER:**

Wacker Neuson objects to this interrogatory to the extent that it calls for a legal conclusion. Subject to and without waiving the foregoing objection, Wacker Neuson states that its interpretation of the Agreement is based on a plain reading of the terms of the Agreement. Paragraph 6 of the Agreement provides that: "The applicant shall remain with the local unit during the period of time for which the abatement has been approved[." Plaintiff is specifically referred to in the Agreement via the defined term "The Company." The Agreement required "the applicant," as opposed to "The Company," to "remain with the local unit." While Plaintiff was "the applicant" at the time it entered into the Act 198 Agreement, Plaintiff ceased being "the applicant" within the meaning of the Agreement when the IFEC was transferred to TGW Systems, Inc. ("TGW"), which then replaced Plaintiff as "the applicant."

This interpretation is supported by records maintained by the State of Michigan, which show TGW listed as the "applicant" for Certificate #2008-038. See WN0010, containing Industrial Facilities Application/Certificate Search result from the Michigan Department of Treasury Website.

**INTERROGATORY 3:** With regard to paragraphs 23 of your complaint (ECF No. 1) dated January 10, 2019, wherein you allege that *"After several additional investments in the City ...it became clear to Wacker Neuson that the facility was not economically sustainable"*, state with particularity:

    a.    The identification of each individual whose information you relied upon to assert that *"the facility was not economically sustainable"*, and for each identified individual state his/her complete name, address, occupation, and telephone/cell number.

    b.    The identification of all facts, factors, and circumstances relied upon in support of your assertion that *"the facility was not economically sustainable"*,

c.    The identification by title, date, and author of each and every document whose content you relied upon in support of your assertion that *"the facility was not economically sustainable"*.

**ANSWER:**

a.    **Ryan Gile.**

b.    **Wacker Neuson does not keep separate financial statements for individual facilities such as the Norton Shores facility. However, Wacker Neuson began running a net loss in North America around 2016, as reflected on financial statements for Wacker Neuson Production Americas, LLC, produced herewith.**

**The Norton Shores facility produced light towers and heaters used in the oil and gas industry for fracking operations in colder climates with seasonal daylight fluctuations. Over the last five years, the fracking industry has diminished, decreasing the demand for the products that the Norton Shores facility had been producing to service the fracking industry in these regions of the world. As a result, the Norton Shores facility's production capacity was excessive and not profitable relative to the overhead of operating the facility.**

c.    **Wacker Neuson produces herewith an income statement trend from 2013 – 2018 which shows the operating losses starting in 2016 and continuing into 2018, as well as signed audited financials from 2016 – 2018.**

**INTERROGATORY 4:** With regard to the *"Industrial Facilities Tax (`IFT') exemption certificate (Certificate #2008-038, the "Certificate") to Wacker Neuson"* referenced in paragraphs 10-12 of your complaint (ECF No. 1) dated January 10, 2019, state with particularity:

a.    Each date that you submitted an application to the City of Norton Shores for the granting of an Industrial Facilities Exemption Certificate (IFE) pursuant to P.A. 198.

b.    Whether your application(s) to the City of Norton Shores for the granting of an Industrial Facilities Exemption Certificate (IFE) pursuant to P.A. 198 was in writing.

c.    If your application(s) to the City of Norton Shores for the granting of an Industrial Facilities Exemption Certificate (IFE) pursuant to P.A. 198 was/were in writing, identify each document supporting your application by title, date, and author.

**ANSWER:**

4

a.      **Wacker Neuson submitted an application some time prior to May 12, 2008. The Certificate was issued on May 12, 2008.**

b.      **Upon information and belief, the application was submitted in writing.**

c.      **Wacker Neuson believes the applications were in writing. However, after conducting a reasonable search, Wacker Neuson is not aware of any responsive documents in its possession, custody, or control, and is therefore unable to identify the documents as requested. In further response, responsive documents are likely in the possession of the City of Norton Shores.**

**INTERROGATORY 5:** With regard to the "Agreement" referenced in paragraphs 12-19 of

your complaint (ECF No. 1) dated January 10, 2019, state with particularity:

a.      The identification of each party to the referenced "Agreement". Each date that you submitted an application to the City of Norton Shores for the granting of an Industrial Facilities Exemption Certificate (IFE) pursuant to P.A. 198.

b.      The identification of each person who executed the "Agreement" on your behalf, and for each identified individual state his/her complete name, address, occupation, and telephone/cell number.

c.      The date(s) you entered into the "Agreement".

d.      The identification of each and every document comprising the "Agreement" by title, date, and author.

**ANSWER:**

Wacker Neuson objects to this interrogatory to the extent it calls for a legal

conclusion.  Subject to and without waiving the foregoing objection, Wacker Neuson states

as follows:

a.      **Wacker Neuson Production Americas, LLC; the City of Norton Shores, Michigan.**

b.      **Lawrence O'Toole, Chief Financial Officer of Wacker Neuson Corp, Managing Member of Wacker Neuson Production Americas, LLC; c/o Varnum.**

c.      **Upon information and belief, Wacker Neuson entered into the Agreement on or around May 12, 2008, when the Certificate was issued. Mr. O'Toole's signature on the Agreement is dated January 18, 2011.**

    d.     **Industrial Facilities Exemption Certificate New Certificate No. 2008-032, dated May 12, 2008, signed by Kelli Sobel, Executive Secretary State Tax Commission.**

            **Act 198 Agreement with the City of Norton Shores, dated 2008, signed January 18, 2011 and February 9, 2011, between Wacker Neuson and City of Norton Shores.**

**INTERROGATORY 6:** With regard to paragraph 14 of your complaint (ECF No. 1) dated January 10, 2019, alleging in part that *"the Agreement granted certain tax savings to Wacker Neuson, and it included a provision that, if the City were to lose out on the economic benefit of operation of the facility at the property, then the City could recapture those tax savings"*, state with particularity:

    a.    The identification of the entirety of the *"provision"* referenced in your allegation as being *"included"* in the *"Agreement"* by stating verbatim its precise content.
    b.    The identification of each *"Agreement"* which *"included"* the *"provision"* by detailing the date of the "Agreement", the parties to the "Agreement", and the persons executing the "Agreement' on behalf of the identified parties.
    c.    If not already disclosed in response to the preceding sub-parts, Interrogatory 6 (a) and (b), then state further the identification by title, date, and author of any other documents you relied upon in support of your allegation in paragraphs 14 of your complaint that the *"Agreement ... included a provision that, if the City were to lose out on the economic benefit of operation of the facility at the property, then the City could recapture those tax savings"*.

**ANSWER:**

**a.**    **See Paragraph 6 of the Act 198 Agreement.**

**b.**    **See responses to Interrogatory No. 5.**

**c.**    **None.**

**INTERROGATORY 7:** With regard to your application(s) for an *"Industrial Facilities Tax ('IFT') exemption certificate (Certificate #2008-038, the "Certificate')"* as referenced in paragraphs 10-12 of your complaint (ECF No. 1) dated January 10, 2019, state with particularity:

    a.    The date the first *"Industrial Facilities Tax ('IFT') exemption certificate"* was issued to you.

b.     The date of each subsequent issuance to you of an *"Industrial Facilities Tax (`IFT') exemption certificate"*.

**ANSWER:**

a.     **May 12, 2008**

b.     **April 26, 2010; September 20, 2010; April 21, 2011; April 17, 2012; August 26, 2014**

**INTERROGATORY 8:** With regard to the amount of $951,346.94 stated in Defendant City's invoice to you as referenced in paragraph 30 of your complaint (ECF No. 1) dated January 10, 2019, and referenced as well in paragraph 32 of Defendant City's Counter-Claim, state whether you agree that $951,346.94 is an accurate calculation of the property taxes you would have paid over the years covered by the Industrial Facilities Exemption Certificate ("IFEC") had the IFEC not been issued. (Answer "Yes" or "No").

**ANSWER:**

**Wacker Neuson lacks sufficient information to determine whether this number is an accurate calculation of the property taxes that it allegedly "would have paid over the years covered" by the IFEC, and therefore Wacker Neuson does not agree with this proposition at this time.**

**INTERROGATORY 9:** If your answer to the preceding interrogatory #8 regarding the calculation of property taxes saved in the amount of $951,346.94 was anything but an unequivocal "Yes", then state with particularity:

a.     The dollar amount of property taxes you would have paid over the years covered by the Industrial Facilities Exemption Certificate ("IFEC") had the IFEC not been issued in your favor.

b.     The identification of each individual whose information you relied upon in any way in support of your statement of the dollar amount of property taxes you would have paid over the years covered by the Industrial Facilities Exemption

7

Certificate ("IFEC") had the IFEC not been issued in your favor, as stated in response to the preceding Interrogatory #9(a), and for each identified individual state his/her complete name, address, occupation, and telephone/cell number.

c.  The identification, by title, date, and author(s), <u>of each and every document</u> containing information supporting your statement as to dollar amount of property taxes you would have paid over the years covered by the Industrial Facilities Exemption Certificate ("IFEC") had the IFEC not been issued in your favor, as stated in your response to the preceding Interrogatory #9(a).

**ANSWER:**

See Answer to Interrogatory No. 9 above.

**INTERROGATORY 10:** With regard to your Count II of you complaint, asserting Breach of

Contract against Defendant City, more particularly paragraphs 48-50, state with particularity:

a.  The facts supporting your assertion that Defendant City breached the Agreement with you.

b.  The damages you claim as a result of the Defendant City's alleged breach of the Agreement, and if monetary, state the monetary relief you claim you are entitled to.

c.  The identification by title, date, and author of each and every document whose content you relied upon in support of your claims that Defendant City breached the Agreement with you and caused you damages.

**ANSWER:**

a.  **Defendant breached the Agreement by attempting to collect taxes from Wacker Neuson even though "the applicant" remained at the facility (as required by paragraph 6 of the Agreement), thereby purporting to deny Wacker Neuson the benefits of the IFEC that it was entitled to receive pursuant to the Agreement. Defendant also breached the Agreement by pursing repayment of allegedly owed taxes prior to affording Wacker Neuson a public hearing.**

b.  **To the extent Defendant continues to claim that Wacker Neuson owes a debt to Defendant, Wacker Neuson has been damaged in the amount of the alleged debt, which Defendant has stated to be $951,346.94.**

**Wacker Neuson has also suffered damages by incurring the cost of responding to Defendant's breach of the Agreement, including court costs and attorney fees, which continue to accrue.**

c.   **Industrial Facilities Exemption Certificate New Certificate No. 2008-032, dated May 12, 2008, signed by Kelli Sobel, Executive Secretary State Tax Commission.**

**Act 198 Agreement with the City of Norton Shores, dated 2008, signed January 18, 2011 and February 9, 2011, between Wacker Neuson and City of Norton Shores.**

**All invoices and correspondences between City of Norton Shores and Wacker Neuson related to the attempted "claw back" of abated taxes.**

VARNUM LLP

Attorneys for Plaintiff/Counter-Defendant

Dated: September 4, 2019

By: _____

Adam J. Brody (P62035)
Jeffrey D. Koelzer (P78602)
BUSINESS ADDRESS & TELEPHONE:
    Bridgewater Place
    P.O. Box 352
    Grand Rapids, MI 49501-0352
    (616) 336-6000
    ajbrody@varnumlaw.com
    jdkoelzer@varnumlaw.com

15184023_1.docx

9

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WACKER NEUSON PRODUCTION
AMERICAS, LLC,

                Plaintiff/Counter-Defendant,

v

CITY OF NORTON SHORES,

                Defendant/Counter-Plaintiff.

Case No. 1:19-cv-00018-JTN-ESC

Hon.  Janet T. Neff

---

| VARNUM LLP | WILLIAMS HUGHES PLLC |
|---|---|
| Adam J. Brody  (P62035) | Douglas M. Hughes (P30958) |
| Jeffrey D. Koelzer (P78602) | Enrika L.F. McGahan (P55860) |
| Attorneys for Plaintiff/Counter-Defendant | John M. Karafa (P36007) |
| 333 Bridge St NW | Attorneys for Defendant/Counter-Plaintiff |
| PO Box 352 | 120 W. Apple Avenue |
| Grand Rapids, MI 49501-0352 | Muskegon, MI 49440 |
| (616) 336-6000 | (231) 726-4857 |
| ajbrody@varnumlaw.com | doughughes@williamshugheslaw.com |
| jdkoelzer@varnumlaw.com | johnkarafa@williamshugheslaw.com |

---

### PLAINTIFF/COUNTER-DEFENDANT'S ANSWERS TO DEFENDANT/COUNTER-PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

NOW COMES Plaintiff/Counter-Defendant, Wacker Neuson Production Americas, LLC ("Wacker Neuson"), by and through its attorneys, Varnum LLP, and responds as follows to Defendant/Counter-Plaintiff's First Request for Production of Documents:

### DOCUMENTS AND THINGS REQUESTED

**Request To Produce #1:**     Produce by delivery to or inspection and copying by Defendant City all documents relating to your allegation in paragraph 18 of your complaint that the *"Agreement requires the 'applicant,' but not the 'Company,' to remain in the City for the duration of the abatement period"*. See your response to Interrogatory 2c).

**RESPONSE:**

Wacker Neuson objects to this request, to the extent it calls on Wacker Neuson to make a legal conclusion.  Subejct to and without waiving the foregoing objection, Wacker Neuson directs Defendant to the Act 198 Agreement between the parties, which is already in Defendant's possession.  By way of further response, Wacker Neuson directs Defendant to the Industrial Facilities Application/Certificate Search results from the Michigan Department of Treasury Website, which are produced herewith.

**Request To Produce #2:**     Produce by delivery to or inspection and copying by Defendant City all documents relating in any way to your allegation in paragraph 23 of your complaint that *"the facility was not economically sustainable"*. (See your response to Interrogatory 3c).

**RESPONSE:**

Wacker Neuson produces herewith an income statement trend from 2013 –and signed audited financials from 2016 – 2018.

**Request To Produce #3:**     Produce by delivery to or inspection and copying by Defendant City all documents relating in any way to your application(s) for an *"Industrial Facilities Tax ("IFT") exemption certificate (Certificate #2008-038, the "Certificate")* as referenced in paragraphs 10-12 of your complaint (ECF No. 1) dated January 10, 2019. (See your response to Interrogatory 4c).

**RESPONSE:**

Wacker Neuson objects to this request to the extent that the requested documents are already in Defendant's possession.  Subject to and without waiving the foregoing objection, Wacker Neuson states that it is not aware of any responsive documents in its possession, custody, or control after conducting a reasonable search.

2

**Request To Produce #4:**   Produce by delivery to or inspection and copying by Defendant City each "Agreement" you entered into with Defendant City as more particularly referenced in paragraphs 12-19 of your complaint (ECF No. 1) dated January 10, 2019. (See your response to Interrogatory 5d).

**RESPONSE:**

**Wacker Neuson objects to this request to the extent that the requested documents are already in Defendant's possession.  Subject to and without waiving the foregoing objection, Wacker Neuson states that responsive documents, if any, will be made available for inspection and copying at a mutually convenient time and place.**

**Request To Produce #5:**   Produce by delivery to or inspection and copying by Defendant City a copy of each *"Industrial Facilities Tax ("IFT") exemption certificate (Certificate #2008-038, the "Certificate)"* issued to you, as referenced in paragraphs 10¬12 of your complaint (ECF No. 1) dated January 10, 2019. (See your responses to Interrogatory 7a. & b).

**RESPONSE:**

**Wacker Neuson objects to this request to the extent that the requested documents are already in Defendant's possession.  Subject to and without waiving the foregoing objection, Wacker Neuson states that responsive documents, if any, will be made available for inspection and copying at a mutually convenient time and place.**

**Request To Produce #6:**   Produce by delivery to or inspection and copying by Defendant City a copy of each of your complete corporate income tax returns with all supporting schedules, attachments, and other supporting documentation including electronically stored data of such data for tax years 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018.

**RESPONSE:**

3

Wacker Neuson objects to this request, as it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

VARNUM LLP

Attorneys for Plaintiff/Counter-Defendant

Dated: September ⌐⌐, 2019

By: _____
    Adam J. Brody (P62035)
    Jeffrey D. Koelzer (P78602)
BUSINESS ADDRESS & TELEPHONE:
    Bridgewater Place
    P.O. Box 352
    Grand Rapids, MI 49501-0352
    (616) 336-6000
    ajbrody@varnumlaw.com
    jdkoelzer@varnumlaw.com

15182282_1.docx

4



WACKER NEUSON
Key Date     1/19/2017
Current User   MKESCHNC

PUM PUM
#..12 2016

# Annual Income Statement for Auditors LC

| | Year to Date | |
|---|---|---|
| | Current Year 012/2016 | Prior Year 012/2015 |
| | USD | USD |
| Revenue | 172,091,804 | 234,950,186 |
| Cost of Sales | -152,577,168 | -204,727,758 |
| Gross Profit | 19,514,636 | 30,222,427 |
| Sales and Service Expenses | -4,568,346 | -4,920,525 |
| Research and Development Expenses | -8,803,000 | -10,591,013 |
| General Administrative Expenses | -8,861,674 | -9,875,520 |
| Other Income | 1,609,441 | 1,302,030 |
| Other Expenses | -1,403,063 | 39,172 |
| Profit before Interest and Taxes | -2,512,005 | 6,176,571 |
| Financial Result | -838,978 | -856,404 |
| Profit before Tax | -3,350,983 | 5,320,167 |
| Taxes on Income | | |
| Profit before Minority Interest | -3,350,983 | 5,320,167 |
| Minority Interest | | |
| Profit for the Period | -3,350,983 | 5,320,167 |

Keith Herr
VP & Managing Director of Manufacturing & Engineering PUM/PUN

WN0011

PUM PUM
12 2016

# Annual Balance Sheet for Auditors LC

**WACKER NEUSON**

Key Date  1/19/2017
Current User  MKESCHNC

## Assets

| | Current 01/2016 | Year End Prior Year 2015 |
|---|---|---|
| | USD | USD |
| Property, Plant and Equipment | 37,010,369 | 39,429,650 |
| Investment Property | | |
| Goodwill | 10,455,286 | 10,455,286 |
| Intangible Assets | 15,771,135 | 16,129,532 |
| Investments | | |
| Deferred Tax Assets | | |
| Other Non-Current Financial Assets | | |
| Other Non-Current Assets | | |
| Total Non-Current Assets | 63,236,811 | 66,014,468 |
| Inventories | 43,916,131 | 44,454,858 |
| Trade Receivables | 209,000 | |
| Trade Receivables IC | 7,188,822 | 4,502,977 |
| Marketable Securities | | |
| Current Tax Receivables | | |
| Other Current Financial Assets | 466,478 | 23,602 |
| Other Current Assets | 1,456,844 | 1,475,154 |
| Cash and Cash Equivalents | -8,388 | -26,632 |
| Assets Held for Sale | | |
| Total Current Assets | 53,228,887 | 50,429,959 |
| Total Assets | 116,465,698 | 116,444,428 |

Keith Herr
VP & Managing Director of Manufacturing & Engineering PUM/PUN

## Equity and Liabilities

| | Current 01/2016 | Year End Prior Year 2015 |
|---|---|---|
| | USD | USD |
| Share Capital | 60,238,776 | 60,238,776 |
| Other Reserves | 0 | 0 |
| Treasury Shares | | |
| Retained Earnings | 12,234,441 | 17,846,624 |
| Equity Before Minority Interest | 72,473,217 | 78,085,401 |
| Minority Interest | | |
| Total Equity | 72,473,217 | 78,085,401 |
| Long-Term Borrowings | | |
| Deferred Taxes Liabilities | | |
| Long-Term Provisions | 20,000 | 25,600 |
| Total Non-Current Liabilities | 20,000 | 25,600 |
| Trade Payables | 10,529,438 | 7,899,389 |
| Trade Payables IC | 794,589 | 3,066,421 |
| Short-Term Borrowings | 0 | 0 |
| Short-Term Borrowings IC | 17,500,000 | 10,000,000 |
| Curr. Portion of LT Borrowings | | |
| Curr. Portion of LT Borrowings IC | | |
| Short-Term Provisions | 270,959 | 0 |
| Current Tax Payable | | |
| Other Financial Liabilities | 11,322,765 | 14,490,947 |
| Other Liabilities | 3,554,739 | 2,886,870 |
| Total Current Liabilities | 43,972,481 | 38,333,427 |
| Total Equity and Liabilities | 116,465,698 | 116,444,428 |

Seite 1 von 1

WN0012

**WACKER NEUSON**

**Wacker Neuson Production Americas, LLC**
**Statement of Changes in Equity**

| Currency: (USD) | Attributable to Equity Holders of the Parent | | | | | |
|---|---|---|---|---|---|---|
| | Share Capital | | Retained Earnings | | Total Equity | |
| Balance at 31 December 2014 | $ | 60,238,776 | $ | 22,799,757 | $ | 83,038,533 |
| Dividends | | - | | (10,273,300) | | (10,273,300) |
| Profit | | - | | 5,320,167 | | 5,320,167 |
| Balance at 31 December 2015 | $ | 60,238,776 | $ | 17,846,624 | $ | 78,085,401 |
| | | | | | | |
| Balance at 31 December 2015 | $ | 60,238,776 | $ | 17,846,624 | $ | 78,085,401 |
| Dividends | | - | | (2,261,200) | | (2,261,200) |
| Profit | | - | | (3,350,983) | | (3,350,983) |
| Balance at 31 December 2016 | $ | 60,238,776 | $ | 12,234,441 | $ | 72,473,217 |

**Keith Herr**
**VP & Managing Director of Manufacturing & Engineering PUM/PUN**

4

WN0013



PUM PUM
#.12 2017

# Annual Income Statement for Auditors LC

|  | Year to Date | |
|---|---|---|
|  | Current Year 01/2/2017 | Prior Year 01/2/2016 |
|  | USD | USD |
| Revenue | 210,415,382 | 172,091,804 |
| Cost of Sales | -189,180,192 | -152,648,383 |
| Gross Profit | 21,235,190 | 19,443,421 |
| Sales and Service Expenses | -4,598,181 | -4,568,346 |
| Research and Development Expenses | -7,823,350 | -8,803,000 |
| General Administrative Expenses | -9,029,589 | -8,861,674 |
| Other Income | 2,997,377 | 1,524,733 |
| Other Expenses | -406,395 | -1,403,063 |
| Profit before Interest and Taxes | 2,375,052 | -2,667,928 |
| Financial Result | -1,290,328 | -683,055 |
| Profit before Tax | 1,084,724 | -3,350,983 |
| Taxes on Income |  |  |
| Profit before Minority Interest | 1,084,724 | -3,350,983 |
| Minority Interest |  |  |
| Profit for the Period | 1,084,724 | -3,350,983 |

_Keith Herr_
VP & Managing Director of Manufacturing & Engineering PUM/PUN



**WACKER NEUSON**
WN0014
Key Date          02/15/2018
Current User    MKEWALCK

PUM PUM
12 2017

# Annual Balance Sheet for Auditors LC

**WACKER NEUSON**

Key Date 2/15/2018
Current User MKEWALCK

## Assets

| Assets | Current 01/2/2017 USD | Year End Prior Year 2016 USD |
|---|---|---|
| Property, Plant and Equipment | 27,736,702 | 37,010,389 |
| Investment Property | | |
| Goodwill | 10,455,286 | 10,455,286 |
| Intangible Assets | 13,848,177 | 15,771,135 |
| Investments | | |
| Deferred Tax Assets | | |
| Other Non-Current Financial Assets | | |
| Other Non-Current Assets | 0 | |
| **Total Non-Current Assets** | 52,042,168 | 63,236,811 |
| Inventories | 42,659,191 | 43,916,131 |
| Trade Receivables | 209,000 | 209,000 |
| Trade Receivables IC | 10,404,716 | 256,934 |
| Marketable Securities | | 7,188,622 |
| Current Tax Receivables | | |
| Other Current Financial Assets | 5,924,196 | 466,476 |
| Other Current Assets | 838,084 | 1,456,844 |
| Cash and Cash Equivalents | -2,185 | -8,388 |
| Assets Held for Sale | | |
| **Total Current Assets** | 66,838,713 | 53,228,887 |
| **Total Assets** | 118,980,879 | 116,465,698 |

## Equity and Liabilities

| Equity and Liabilities | Current 01/2/2017 USD | Year End Prior Year 2016 USD |
|---|---|---|
| Share Capital | 60,238,776 | 60,238,776 |
| Other Reserves | | |
| Treasury Shares | | |
| Retained Earnings | 13,319,184 | 12,234,441 |
| Equity Before Minority Interest | 73,557,941 | 72,473,217 |
| Minority Interest | | |
| **Total Equity** | 73,557,941 | 72,473,217 |
| Long-Term Borrowings | | |
| Deferred Taxes Liabilities | 120,000 | 20,000 |
| Long-Term Provisions | 120,000 | 20,000 |
| **Total Non-Current Liabilities** | 120,000 | 20,000 |
| Trade Payables | 15,600,701 | 10,529,438 |
| Trade Payables IC | 1,666,040 | 794,589 |
| Short-Term Borrowings | | |
| Short-Term Borrowings IC | 20,000,000 | 17,500,000 |
| Curr. Portion of LT Borrowings | | |
| Curr. Portion of LT Borrowings IC | | |
| Short-Term Provisions | 1,847,618 | 270,959 |
| Current Tax Payable | 1,892,123 | 11,322,755 |
| Other Financial Liabilities | 4,096,457 | 3,554,739 |
| Other Liabilities | | |
| **Total Current Liabilities** | 45,302,838 | 43,972,481 |
| **Total Equity and Liabilities** | 118,980,879 | 116,465,698 |

Keith Herr
VP & Managing Director of Manufacturing & Engineering PUM/PUN

Seite 1 von 1

WN0015

 

**Wacker Neuson Production Americas, LLC**
**Statement of Changes in Equity**

| Currency: (USD) | Attributable to Equity Holders of the Parent | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Share Capital | | | Retained Earnings | | | Total Equity |
| Balance at 31 December 2015 | $ | 60,238,776 | $ | 17,846,624 | | $ | 78,085.401 |
| Dividends | $ | - | $ | (2,261,200) | | $ | (2,261,200) |
| Profit | $ | - | $ | (3,350,983) | | $ | (3,350,983) |
| Balance at 31 December 2016 | $ | 60,238,776 | $ | 12,234,441 | | $ | 72,473,217 |
| | | | | | | | |
| Balance at 31 December 2016 | $ | 60,238,776 | $ | 12,234,441 | | $ | 72,473,217 |
| Dividends | $ | - | $ | - | | $ | - |
| Profit | $ | - | $ | 1,084,724 | | $ | 1,084,724 |
| Balance at 31 December 2017 | $ | 60,238,776 | $ | 13,319,164 | | $ | 73,557,941 |

Keith Herr
VP & Managing Director of Manufacturing & Engineering PUM/PUN

4

WN0016


**Wacker Neuson Group**

# Income Statement in LC

## PUM - Wacker Neuson Production Americas LLC
### December 2018

| | Period to Date | | | | Year to Date | | | |
|---|---|---|---|---|---|---|---|---|
| | Current 12.2018 | Prior Year 12.2017 | Var to Prior Year | Var to Prior Year in % | Current 12.2018 | Prior Year 12.2017 | Var to Prior Year | Var to Prior Year in % |
| | USD | USD | USD | % | USD | USD | USD | % |
| Revenue | 3,649,660 | 13,589,791 | -9,939,931 | -73.1 | 209,790,632 | 210,415,382 | -624,750 | -0.3 |
| Cost of Sales | -4,347,940 | -14,267,900 | 9,919,959 | -69.5 | -197,023,076 | -189,180,192 | -7,842,886 | -4.1 |
| Gross Profit | -698,281 | -678,109 | -19,972 | -2.9 | 12,767,564 | 21,235,190 | -8,467,626 | -39.9 |
| Sales and Service Expenses | -900,434 | -326,916 | -573,518 | -175.4 | -5,158,475 | -4,598,181 | -560,295 | -12.2 |
| Research and Development Expenses | -544,263 | -775,415 | 231,152 | 29.8 | -7,777,875 | -7,823,350 | 45,475 | 0.6 |
| General Administration Expenses | 157,592 | -898,685 | 1,056,277 | 117.5 | -7,845,109 | -9,029,589 | 1,184,480 | 13.1 |
| Other Income | 62,306 | 114,882 | -52,576 | -45.8 | 1,406,094 | 2,997,377 | -1,591,283 | -53.1 |
| Other Expenses | -63,511 | 116 | -43,795 | -55,014.8 | -100,290 | -406,395 | 306,105 | -75.3 |
| EBIT | -1,986,790 | -2,564,359 | 577,568 | 22.5 | -6,708,101 | 2,375,052 | -9,083,153 | -382.4 |
| Financial Income | 20,388 | 6,137 | 14,251 | 232.2 | 113,833 | 28,728 | 85,104 | 296.2 |
| Financial expense | -16,264 | -106,336 | 90,072 | 84.7 | -128,604 | -1,319,057 | 1,190,453 | 90.3 |
| EBT | -1,982,667 | -2,664,559 | 681,892 | 25.6 | -6,722,873 | 1,084,724 | -7,807,596 | -719.8 |
| Taxes on Income | | | | | | | | |
| Profit before Minority Interest | -1,982,667 | -2,664,559 | 681,892 | 25.6 | -6,722,873 | 1,084,724 | -7,807,596 | -719.8 |
| Minority Interest | | | | | | | | |
| Profit for the period | -1,982,667 | -2,664,559 | 681,892 | 25.6 | -6,722,873 | 1,084,724 | -7,807,596 | -719.8 |

Ryan Gile
Chief Operating Officer - North America

MNEWALCK

WN0017



**Wacker Neuson Group**

MKEWALCK

# Balance Sheet in LC

## PUM - Wacker Neuson Production Americas LLC
### December 2018

| | Current 01/22/2018 YTD (USD) | in % | Prior Year 01/22/2017 YTD (USD) | in % | Year End Prior Year 2017 (USD) | in % | Ver to Year End Prior Year (USD) | Ver to Year End Prior Year in % |
|---|---|---|---|---|---|---|---|---|
| Property, Plant and Equipment | 28,698,794 | 21.2 | 27,738,702 | 23.3 | 27,738,702 | 23.3 | 960,092 | 3.5 |
| Investment Property | | | | | | | | |
| Goodwill | 10,455,286 | 7.7 | 10,455,286 | 8.8 | 10,455,286 | 8.8 | 0 | 0.0 |
| Intangible Assets | 14,326,406 | 10.6 | 13,848,177 | 11.6 | 13,848,177 | 11.6 | 478,229 | 3.5 |
| Investments | | | | | | | | |
| Deferred Tax Assets | | | | | | | | |
| Other Non-Current Financial Assets | | | | | | | | |
| Other Non-Current Assets | 0 | | 0 | | 0 | | 0 | 0.0 |
| Total Non-Current Assets | 53,480,487 | 39.6 | 52,042,166 | 43.7 | 52,042,166 | 43.7 | 1,438,321 | 2.8 |
| Rental Equipment | | | | | | | | |
| Inventories | 57,807,941 | 42.8 | 42,859,191 | 38.0 | 42,859,191 | 38.0 | 14,948,750 | 34.9 |
| Trade Receivables | 286,350 | 0.2 | 259,834 | 0.2 | 259,834 | 0.2 | 26,516 | 10.2 |
| Trade Receivables IC | 9,312,725 | 6.9 | 10,404,716 | 8.7 | 10,404,716 | 8.7 | -1,091,992 | -10.5 |
| Marketable Securities | | | | | | | | |
| Current Tax Receivables | | | | | | | | |
| Other Current Financial Assets | 13,708,391 | 10.2 | 5,924,196 | 5.0 | 5,924,196 | 5.0 | 7,874,195 | 132.9 |
| Other Current Assets | 444,112 | 0.3 | 835,084 | 0.7 | 835,084 | 0.7 | -391,972 | -46.9 |
| Cash and Cash Equivalents | 7 | 0.0 | -2,185 | 0.0 | -2,185 | 0.0 | 2,192 | -100.3 |
| Assets Held for Sale | 0 | 0.0 | 8,656,876 | 5.8 | 8,656,876 | 5.8 | -8,656,876 | -100.0 |
| Total Current Assets | 81,649,526 | 60.4 | 66,938,713 | 56.3 | 66,938,713 | 56.3 | 14,710,813 | 22.0 |
| Total Assets | 135,130,013 | 100.0 | 118,980,879 | 100.0 | 118,980,879 | 100.0 | 16,149,134 | 13.6 |
| Share Capital | 60,238,779 | 44.6 | 60,238,779 | 50.6 | 60,238,779 | 50.6 | 0 | 0.0 |
| Other Reserves | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Treasury Shares | | | | | | | | |
| Retained Earnings | 6,596,292 | 4.9 | 13,319,164 | 11.2 | 13,319,164 | 11.2 | -6,722,873 | -50.5 |
| Equity before Minority Interest | 66,835,068 | 49.5 | 73,557,941 | 61.8 | 73,557,941 | 61.8 | -6,722,873 | -9.1 |
| Minority Interest | | | | | | | | |
| Total Equity | 66,835,068 | 49.5 | 73,557,941 | 61.8 | 73,557,941 | 61.8 | -6,722,873 | -9.1 |
| Long-Term Borrowings | | | | | | | | |
| Long-Term Provisions | 20,116 | 0.0 | 120,000 | 0.1 | 120,000 | 0.1 | -99,884 | -83.2 |
| Total Non Current Liabilities | 20,116 | 0.0 | 120,000 | 0.1 | 120,000 | 0.1 | -99,884 | -83.2 |
| Trade Payables | 29,143,098 | 21.6 | 15,800,701 | 13.3 | 15,800,701 | 13.3 | 13,342,394 | 84.4 |
| Trade Payables IC | 12,270,718 | 9.1 | 1,866,040 | 1.4 | 1,866,040 | 1.4 | 10,604,678 | 638.5 |
| Short-Term Borrowings | 0 | | 0 | | 0 | | 0 | 0.0 |
| Short-Term Borrowings IC | 20,000,000 | 14.8 | 20,000,000 | 16.8 | 20,000,000 | 16.8 | 0 | 0.0 |
| Curr. Portion of LT Borrowings | | | | | | | | |
| Curr. Portion of LT Borrowings IC | | | | | | | | |
| Short-Term Provisions | 1,040,601 | 0.8 | 1,847,618 | 1.6 | 1,847,618 | 1.6 | -807,017 | -43.7 |
| Current Tax Payable | | | | | | | | |
| Other Financial Liabilities | 2,703,792 | 2.0 | 1,882,123 | 1.6 | 1,882,123 | 1.6 | 811,669 | 42.9 |
| Other Liabilities | 3,116,622 | 2.3 | 4,096,457 | 3.4 | 4,096,457 | 3.4 | -979,835 | -23.9 |
| Total Current Liabilities | 68,274,829 | 50.5 | 45,492,938 | 38.1 | 45,492,938 | 38.1 | 22,781,891 | 50.1 |
| Total Equity and Liabilities | 135,130,013 | 100.0 | 118,980,879 | 100.0 | 118,980,879 | 100.0 | 16,149,134 | 13.6 |

Ryan Gile
Chief Operating Officer - North America

WN0018

MKEWALCK

Wacker Neuson Group

**Statement of Changes in Equity**
**PUM - Wacker Neuson Production Americas LLC**

| Currency: (USD) | Share Capital | | Attributable to Equity Holders of the Parent | | Total Equity | |
|---|---|---|---|---|---|---|
| | | | Retained Earnings | | | |
| Balance at 31 December 2016 | $ | 60,238,776 | $ | 12,234,441 | $ | 72,473,217 |
| Dividends | $ | - | $ | - | $ | - |
| Profit | $ | - | $ | 1,084,724 | $ | 1,084,724 |
| Balance at 31 December 2017 | $ | 60,238,776 | $ | 13,319,164 | $ | 73,557,941 |
| Balance at 31 December 2017 | $ | 60,238,776 | $ | 13,319,164 | $ | 73,557,941 |
| Dividends | $ | - | $ | - | $ | - |
| Profit | $ | - | $ | (6,722,873) | $ | (6,722,873) |
| Balance at 31 December 2018 | $ | 60,238,776 | $ | 6,596,292 | $ | 66,835,068 |

Ryan Gile
Chief Operating Officer - North America

Status of Data: 29.09.2015 13:48:14

WN0019

## Wacker Neuson Production Americas LLC
### INCOME STATEMENT
### PUM US11

| U S Dollars (in 000) | YEAR TO DATE | | | | | |
|---|---|---|---|---|---|---|
| | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
| Revenue | 225,149 | 255,523 | 234,950 | 172,092 | 210,415 | 209,791 |
| Cost of Sales | (195,243) | (217,050) | (204,728) | (152,577) | (189,180) | (197,023) |
| Gross Profit | 29,905 | 38,473 | 30,222 | 19,515 | 21,235 | 12,768 |
| *Gross Profit % of Revenue* | 13.3% | 15.1% | 12.9% | 11.3% | 10.1% | 6.1% |
| | | | | | | |
| Expenses: | | | | | | |
| Selling & Service | (3,249) | (4,806) | (4,921) | (4,568) | (4,598) | (5,158) |
| Research and Development | (7,166) | (9,677) | (10,591) | (8,803) | (7,823) | (7,778) |
| General and Administrative | (13,169) | (11,176) | (9,876) | (8,862) | (9,030) | (7,845) |
| SG&A Total | (23,584) | (25,660) | (25,387) | (22,233) | (21,451) | (20,781) |
| *SG&A % of Revenue* | 10.5% | 10.0% | 10.8% | 12.9% | 10.2% | 9.9% |
| | | | | | | |
| Operating Profit | 6,322 | 12,813 | 4,835 | (2,718) | (216) | (8,014) |
| *Operating Profit as % of Revenue* | 2.8% | 5.0% | 2.1% | -1.6% | -0.1% | -0.1% |
| | | | | | | |
| Other Income | 2,172 | 2,375 | 1,302 | 1,609 | 2,997 | 1,406 |
| Other Expenses | (2,289) | (163) | 39 | (1,403) | (406) | (100) |
| Other I/E Total | (117) | 2,212 | 1,341 | 206 | 2,591 | 1,306 |
| | | | | | | |
| EBIT | 6,205 | 15,025 | 6,177 | (2,512) | 2,375 | (6,708) |
| *EBIT % of Revenue* | 2.8% | 5.9% | 2.6% | -1.5% | 1.1% | -3.2% |
| | | | | | | |
| Financial Results | (766) | (518) | (856) | (839) | (1,290) | (15) |
| | | | | | | |
| EBT | 5,439 | 14,507 | 5,320 | (3,351) | 1,085 | (6,723) |

WN0020