UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WACKER NEUSON PRODUCTION
AMERICAS, LLC,

        Plaintiff/Counter-Defendant,

v

CITY OF NORTON SHORES,

        Defendant/Counter-Plaintiff.

Case No. 1:19-cv-00018-JTN-ESC

Hon.  Janet T. Neff

| VARNUM LLP | WILLIAMS HUGHES PLLC |
|---|---|
| Adam J. Brody  (P62035) | Douglas M. Hughes (P30958) |
| Jeffrey D. Koelzer (P78602) | Enrika L.F. McGahan (P55860) |
| Attorneys for Plaintiff/Counter-Defendant | John M. Karafa (P36007) |
| 333 Bridge St NW | Attorneys for Defendant/Counter-Plaintiff |
| PO Box 352 | 120 W. Apple Avenue |
| Grand Rapids, MI 49501-0352 | Muskegon, MI 49440 |
| (616) 336-6000 | (231) 726-4857 |
| ajbrody@varnumlaw.com | doughughes@williamshugheslaw.com |
| jdkoelzer@varnumlaw.com | johnkarafa@williamshugheslaw.com |

**PLAINTIFF/COUNTER-DEFENDANT WACKER NEUSON PRODUCTION
AMERICAS, LLC'S REQUEST FOR PRE-MOTION CONFERENCE**

**I.     INTRODUCTION**

This is a dispute between a manufacturing company, Plaintiff/Counter-Defendant, Wacker Neuson Production Americas, LLC ("WNPA"), and a municipality, Defendant/Counter-Plaintiff, the City of Norton Shores. The case involves the City's attempt to recapture approximately 10 years' worth of abated taxes in the wake of WNPA's transfer of its Industrial Facilities Exemption Certificate ("IFEC" or "certificate") to a new manufacturer that took its place at the facility in question, a transfer that was specifically approved by the City.

There are two main issues to be resolved in this case, each of which should be resolved in WNPA's favor on summary judgment: (1) whether WNPA can be forced to repay taxes that were abated in favor of a separate and distinct corporate entity known as Wacker Corporation for the first two years that the IFEC was in effect; and (2) whether the parties' contract can be interpreted in such a way as to require WNPA to repay the remaining previously abated taxes, when it is undisputed that the underlying IFEC remains in effect in favor of a new "applicant" for that IFEC that is still operating at the property in Norton Shores. The answer with respect to both issues is "no" as a matter of law, and WNPA intends to file a motion for summary judgment to obtain a ruling to that effect.

**II.    WNPA CANNOT BE LIABLE FOR ALLEGED CONTRACTUAL LIABILITIES OF SEPARATE ENTITY WACKER CORPORATION FROM 2009 AND 2010**

On the first issue, there is no question that, for tax years 2009 and 2010, the City had a contractual relationship only with Wacker Corporation, not WNPA. In fact, WNPA did not even come into existence until late 2010, and when it did, it obtained a transfer of the IFEC from Wacker Corporation and entered into its own contract with the City regarding that certificate. Given clear Michigan law regarding contractual liability, and specifically liability as between

1

parent and subsidiary companies, there is no doubt that the City is not entitled to recapture from WNPA taxes that were abated in favor of Wacker Corporation.

### III. WNPA IS NOT LIABLE FOR REPAYMENT OF TAX ABATEMENTS UNDER THE TERMS OF THE PARTIES' CONTRACT BECAUSE THE CERTIFICATE WAS TRANSFERRED TO A NEW "APPLICANT"

On the second issue, the City contends that its contract with WNPA required WNPA itself to continue operating at the facility until the end of the 12-year term of the certificate (December 2020) in order to retain all of the tax benefits that WNPA enjoyed during its portion of the term of the certificate. That is not so. The agreement at issue referred to WNPA with the defined term "The Company" throughout the agreement. The agreement imposes certain obligations on "the Company," such as "submit[ting] a letter to the City no later than January 10th immediately following the second year after the issuance of the IFE certifying" certain information regarding the number of jobs created and the actual costs of property acquisitions.

Paragraph 6 of the agreement, however, states obligations for "the applicant," as opposed to the "Company":

> 6. The applicant shall remain with the local unit during the period of time for which the abatement has been approved and, if the applicant relocates, substantially reduces employment and/or operations, or closes the facility, the applicant shall pay to the affected taxing units an amount equal to those taxes it would have paid had the abatements not been in effect.

Given this use of different terms (i.e., the defined term *The Company* and the undefined term *applicant*) within different provisions of the agreement, the only logically and legally sound interpretation of the parties' contract is that it permitted a new entity to become the "applicant" with regard to the certificate for purposes of the tax recapture provision, by way of a direct transfer of the certificate to the new entity.

Just as happened in 2011 with the transfer of the certificate from Wacker Corporation to the new "applicant," WNPA, the certificate was again transferred in 2018 from WNPA to a new

2

"applicant," TGW Systems, Inc. ("TGW"), with the City's express authorization. At that time, TGW stepped into the shoes of WNPA as the "applicant" for the certificate at the facility, just as WNPA had previously stepped into the shoes of Wacker Corporation in 2011, and TGW continues to operate at the facility to this day. Because TGW has continued operating at the facility as the "applicant" for the certificate at issue, WNPA's contractual obligations have been satisfied at all times.

Indeed, the City's own conduct shows that this is the only viable interpretation of the parties' contract, since the City approved of the transfer of the certificate from Wacker Corporation to WNPA in 2011 (following identical procedures), yet did nothing to try to recoup previously abated taxes from Wacker Corporation.

### IV.   CONCLUSION

In sum, WNPA seeks a straightforward interpretation of the plain language of the contract and a declaratory ruling that it has no obligation to repay the tax benefits that the City has sought to recover. The City, on the other hand, (1) demands that WNPA pay the alleged debts of a separate corporate entity for which WNPA clearly has no contractual liability; and (2) seeks to rewrite the contract that the City itself drafted in order to obtain a windfall by not only realizing the full economic benefit for which it bargained (*i.e.*, 12 years of corporate investment and employment at the facility) but also reclaiming nearly all of the tax benefits that it was obligated to provide in order to obtain that benefit. The City's position is both factually and legally untenable, and summary judgment should be granted in favor of WNPA on each of the parties' claims.

                        VARNUM LLP

                        Attorneys for Plaintiff/Counter-Defendant

Dated: August 10, 2020        By:    */s/ Jeffrey D. Koelzer*
                                          Adam J. Brody (P62035)
                                          Jeffrey D. Koelzer (P78602)
                              BUSINESS ADDRESS & TELEPHONE:
                                          Bridgewater Place
                                          P.O. Box 352
                                          Grand Rapids, MI 49501-0352
                                          (616) 336-6000
                                          ajbrody@varnumlaw.com
                                          jdkoelzer@varnumlaw.com

16056107_1.docx